2016-1131

# United States Court of Appeals
# for the Federal Circuit

MOULDTEC, INC.,

*Plaintiff-Appellee,*

*v.*

PAGTER & PARTNERS INTERNATIONAL B.V.,
PAGTER INNOVATIONS, INC.,

*Defendants-Appellants.*

*Appeal from the United States District Court for the Northern District
of Illinois in case no. 1:12-cv-04249, Judge Virginia M. Kendall*

## BRIEF FOR DEFENDANTS-APPELLANTS

PATRICK J. ARNOLD JR.
DAVID Z. PETTY
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, IL 60661
parnold@mcandrews-ip.com
dpetty@mcandrews-ip.com
Direct: (312) 775-8000
Fax: (312) 775-8100

*Attorneys for Defendants-Appellants*

DECEMBER 28, 2015

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

MOULDTEC, INC. v. PAGTER & PARTNERS INTERNATIONAL B.V. and
PAGTER INNOVATIONS, INC.

Appeal No. 2016-1131

**APPELLANTS' CERTIFICATE OF INTEREST**

The undersigned counsel of record for Appellants hereby certifies the following in compliance with Federal Circuit Rule 47.4:

1.    The full name of every party or amicus represented by me is:

        PAGTER & PARTNERS INTERNATIONAL B.V. and PAGTER INNOVATIONS, INC.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

        None.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

        None.

4.    The names of all law firms and the partners or associates that have appeared for the party or amicus now represented by me in the trial court or agency or are now expected to appear in this court are:

        **McAndrews, Held & Malloy, Ltd.**: Patrick J. Arnold Jr., and David Z. Petty.

# TABLE OF CONTENTS

APPELLANTS' CERTIFICATE OF INTEREST ................................................... ii

TABLE OF CONTENTS ........................................................................................ iii

TABLE OF AUTHORITIES .................................................................................. v

STATEMENT OF RELATED CASES .................................................................. 1

STATEMENT OF SUBJECT MATTER  AND APPELLATE
      JURISDICTION ............................................................................................. 1

STATEMENT OF THE ISSUES ........................................................................... 2

STATEMENT OF THE CASE ............................................................................... 3

STATEMENT OF THE FACTS ............................................................................. 5

      A.    Pagter's Technology and Products .......................................... 5

      B.    Mouldtec's Infringing Product ............................................... 7

      C.    Pagter's 330 Patent ................................................................. 8

      D.    The District Court Proceedings ............................................ 11

            1.    Claim Construction ..................................................... 11

            2.    Summary Judgment ..................................................... 13

SUMMARY OF THE ARGUMENT ..................................................................... 14

ARGUMENT ........................................................................................................ 15

I.      STANDARD OF REVIEW ........................................................................ 15

II.     THE COURT ERRED IN ITS CONSTRUCTION OF THE SIDE
      WALLS LIMITATION ............................................................................... 15

      A.    The District Court's Construction Is Contrary to the Ordinary
            Meaning of the Claim Language .......................................... 16

      B.    The Prior Art Shows that a Person of Skill in the Art Would
            Have Understood "Walls" to Mean At Least Two Walls ................. 18

C.      The District Court's Construction Is Based on Language
        Imported from the Specification ........................................................20

D.      The Doctrine of Claim Differentiation Weighs Against the
        District Court's Construction ............................................................22

E.      Nothing in the Specification Suggests Limiting the Scope of
        Claim 2 to a Crate Having Four Sloping Side Walls .........................22

III.    THE COURT ERRED IN ITS CONSTRUCTION OF THE
        SHOULDER LIMITATION ..........................................................................25

A.      The District Court's *Markman* Order Erred in Finding that the
        Shoulder Limitation Did Not Require Construction ...........................26

B.      The District Court Erred Again In Finding On Summary
        Judgment That the Shoulder Limitation Requires the Shoulder
        to be Arranged on the Inside of the Channel......................................28

C.      Even if, *Arguendo*, the District Court Did Not Err in its
        Construction of the Shoulder Limitation, Pagter Should be
        Allowed to Present Evidence Based on the New Construction
        on Remand...........................................................................................31

IV.     CONCLUSION.............................................................................................32

CERTIFICATE OF SERVICE ..................................................................................33

CERTIFICATE OF COMPLIANCE..........................................................................34

# TABLE OF AUTHORITIES

## CASES

*Acumed L.L.C. v. Stryker Corp.*,
   483 F.3d 800 (Fed. Cir. 2007) ..............................................................28

*Agfa Corp. v. Creo Prods. Inc.*,
   451 F.3d 1366 (Fed. Cir. 2006) ............................................................22

*Alloc, Inc. v. Int'l Trade Comm'n*,
   342 F.3d 1361 (Fed. Cir. 2003) ............................................................16

*Applera Corp. v. Micromass Uk*,
   186 F. Supp. 2d 487 (D. Del. 2002) ......................................................17

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
   616 F.3d 1249 (Fed. Cir. 2010) ............................................................20

*Chicago Truck Drivers v. El Paso CGP Co.*,
   525 F.3d 591 (7th Cir. 2008) ................................................................31

*E-Pass Techs., Inc. v. 3Com Corp.*,
   343 F.3d 1364 (Fed. Cir. 2003) ............................................................24

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
   355 F.3d 1327 (Fed. Cir. 2004) ............................................................24

*In re Hyatt*,
   708 F.2d 712 (Fed. Cir. 1983) ..............................................................27

*Johnson Worldwide Assocs. v. Zebco Corp.*,
   175 F.3d 985 (Fed. Cir. 1999) ..............................................................21

*Kara Tech. Inc. v. Stamps.com Inc.*,
   582 F.3d 1341 (Fed. Cir. 2009) .................................................. 16, 30

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
   177 F.3d 968 (Fed. Cir. 1999) ..............................................................22

*Koninklijke Philips, N.V. v. Zoll Med. Corp.*,
   No. 12-12255-NMG, 2014 U.S. Dist. LEXIS 113735 (D. Mass.
   Aug. 15, 2014) ......................................................................................17

*Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*,
   285 F.3d 1353 (Fed. Cir. 2002) ............................................................17

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) ..............................................................25

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) (*en banc*) *aff'd*, 517 U.S. 370 (1996) ...................15

*Minton v. Nat'l Ass'n of Secs. Dealers*,
  197 F. Supp. 2d 699 (E.D. Tex. 2001) ................................................17

*Mouldtec, Inc. v. Pagter & Partners Int'l B.V.*, 12 C 4249, 2014 U.S.
  Dist. LEXIS 123300 (N.D. Ill. June 4, 2014)..........................................3

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
  545 F.3d 1359 (Fed. Cir. 2008) ........................................................15

*Northrop Grumman Corp. v. Intel Corp.*,
  325 F.3d 1346 (Fed. Cir. 2003) ........................................................24

*Resonate Inc. v. Alteon Websystems, Inc.*,
  338 F.3d 1360 (Fed. Cir. 2003) ........................................................23

*Retractable Techs. Inc. v. Becton, Dickinson & Co.*,
  653 F.3d 1296 (Fed. Cir. 2011) ........................................................23

*Silicon Graphics, Inc. v. ATI Technologies, Inc.*,
  607 F.3d 784 (Fed. Cir. 2010) .........................................................21

*Starhome GmbH v. AT&T Mobility LLC*,
  743 F.3d 849 (Fed. Cir. 2014) .........................................................16

*Thorner v. Sony Computer Entm't Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012) ................................................... 20, 23

*TQP Dev., LLC v. 1-800-Flowers.com, Inc.*,
  No. 2:11-CV-248, 2013 U.S. Dist. LEXIS 70836 (E.D. Tex. May
  20, 2013)..............................................................................17

*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997) ........................................................27

*Vermont v. MPHJ Tech. Invs., LLC*,
  803 F.3d 635 (Fed. Cir. 2015) .........................................................32

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) .........................................................18

**STATUTES**

28 U.S.C. § 1295(a) ........................................................................1

28 U.S.C. § 1338(a) ........................................................................1

vi

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil action was previously before this or any other appellate court. Counsel for Appellants Pagter & Partners International B.V. and Pagter Innovations, Inc. (collectively, "Pagter" or "Appellants") is not aware of any cases pending in this or any other court that will directly affect or be affected by this Court's decision in the pending appeal.

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The U.S. District Court for the Northern District of Illinois (Honorable Virgina M. Kendall) had jurisdiction over the patent-infringement action giving rise to this appeal under 28 U.S.C. § 1338(a). The U.S. Court of Appeals for the Federal Circuit has jurisdiction over this appeal under 28 U.S.C. § 1295(a). Pagter timely filed its notice of appeal of the June 6, 2014 claim construction order and the September 29, 2015 summary judgment order that disposed of all parties' claims in accordance with 28 U.S.C. 2107(a) and Fed. R. App. P. 4(a) on October 26, 2015.

## STATEMENT OF THE ISSUES

1.     Whether the district court erred when it construed the limitation "the rectangular crate having sloping side walls" of claim 2 of Pagter's United States Patent No. 6,581,330 (the "330 patent") to require that all four walls are sloping instead of requiring that only two or more walls are sloping.

2.     Whether the district court erred in granting summary judgment of non-infringement of the 330 patent when the court, for the first time in the case, construed the shoulder limitation of claim 2 and, in doing so, narrowed the claim by importing a limitation from the specification requiring the shoulder to be "arranged on the inside of the channel" of the rectangular crate.

## STATEMENT OF THE CASE

This is a patent infringement case.  Pagter is the assignee of the patent-in-suit, the 330 patent.  In May 2012, Mouldtec filed a complaint against Pagter seeking, *inter alia*, a declaratory judgment of non-infringement and invalidity of the 330 patent.

During the course of the proceedings below, the district court erred in its *Markman* order (*see Mouldtec, Inc. v. Pagter & Partners Int'l B.V.*, 12 C 4249, 2014 U.S. Dist. LEXIS 123300 (N.D. Ill. June 4, 2014)) and in a subsequent claim construction made for the first time in its summary judgment order.  *See Mouldtec, Inc. v. Pagter & Partners Int'l B.V.*, 12 C 4249, 2015 U.S. Dist. LEXIS 133119 (N.D. Ill. Sep. 29, 2015).

Claim 2 of the 330 patent recites a crate having, *inter alia*, "sloping side walls" (the "side walls limitation") and "a shoulder projecting into the interior volume and extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel" (the "shoulder limitation").  In its *Markman* order, the district court construed the side walls limitation too narrowly and refused to correct a grammatical error in the shoulder limitation.

The ordinary meaning of the phrase "sloping side walls" is that <u>at least two</u> side walls are sloping.  This construction is based on rules of logic and grammar.

3

The district court, however, erred by improperly importing language relating to the preferred embodiment into the limitation to find that the claimed crate must have "four sloping side walls."   There is no evidence in the intrinsic record that the applicant intended the preferred embodiment to be coextensive with the scope of the claims.

As Pagter argued during the *Markman* proceeding, the shoulder limitation should be construed to mean "a shoulder projecting into the interior volume and extending between the top *of each of the two* sloping walls of the crate and the channel base or the bottom of the inner flange of the channel."   This construction corrects a grammar error in the limitation (*i.e.*, multiple wall<u>s</u> cannot have a single "top") and reconciles the shoulder limitation with the correct understanding of the scope of the side walls limitation.   The district court, however, chose not to construe the shoulder limitation.

Subsequent to the *Markman* proceeding, the parties reasonably relied on the district court's constructions of the side walls and shoulder limitations in completing expert reports and discovery and in presenting evidence on summary judgment.   However, on summary judgment the district court for the first time found that the shoulder limitation should be construed to mean that the shoulder is "arranged on the inside of the channel."   This new construction, which was never offered or considered by either party, improperly imports this language from the

specification.  Based on this new erroneous construction, which neither party relied upon in presenting evidence on summary judgment, the district court granted Mouldtec's motion for summary judgment of non-infringement.

## STATEMENT OF THE FACTS

### A.    Pagter's Technology and Products

Pagter, a Netherlands-based company, is a worldwide leader in the design and manufacture of packaging for shipping and displaying flowers.  The 330 patent issued to Pagter founder Janus de Pagter and Joannes Helsoot in 2003 and relates to a crate packaging system for cut flowers.  A71.  The packaging can be used for both the shipping and displaying of cut flowers.  A81 (1:11-20).  The packaging system described in the 330 patent and sold by Pagter includes a crate, a foldable protective tube, and a ventilated cover.  A81 (2:37-41); A318-20.  As shown below, the cut flowers are placed in the crate, the tube is positioned in a channel at the top of the crate, and the ventilated cover is then placed on top of the tube.  The system is secured with tape or a band, and the packaged flowers then can be shipped.



As shown below, the ventilated cover allows the packaged flowers to "breathe" during shipment even when the packaging systems are stacked on top of each other. A81 (1:66-2:5).



Once a retailer receives the packaged flowers, the retailer can pull off the cover and tube and then place the crate on top of the tube to create an attractive display for the flowers without ever having to remove the flowers from the packaging. A81 (1:35-59).



Figure 1 of the 330 Patent

Packaging Sold by Pagter

### B.    Mouldtec's Infringing Product

Mouldtec sells a flower crate system that is strikingly similar to Pagter's. Mouldtec sells two different crates as part of its packaging system, the Secchio and Tazza (the "Accused Crates"). A558. The only significant difference between the Secchio and Tazza crates is size – the Secchio is the larger of the two crates. A460; A558; A751. As shown below, the Mouldtec Accused Crates – like the

crates Pagter sells and the 330 patent describes – are used with a tube and cover to ship flowers and are then used to display flowers.  A474.



Secchio Bucket with Corrugated
Cardboard Sleeve and Capello
Lid



MOU-000251

Mouldtec's president was well aware of the 330 patent when he developed the Mouldtec flower crate packaging system.  A1135-36.

### C.    Pagter's 330 Patent

The 330 patent describes "packaging for cut flowers compris[ing] a rectangular crate 1," "a rectangular protective tube 2," and "a cover 3."  A72, A81 (2:37-44).  These features are shown in Figure 1 of the 330 patent below.  The crate includes two relatively long side walls located opposite each other and two short side walls located opposite each other.    A81 (2:49-51).    While the specification states that the "crate has sloping side walls such that it is nestable in a similar crate," nowhere does the specification define the side walls such that all four side walls must be sloping.  A81 (2:47-48).

8



With reference to Figure 3 below, which shows a cutaway side view of two stacked crates, the specification further states that "[a]t its top edge[,] the crate 1 has a channel which projects outwards and has an outer flange 5, an inner flange 6 and a base 7." A81 (2:45-47). The specification also states that a "shoulder 9 is arranged on the inside of the channel 5, 6, 7 open at the top, approximately at the height of the base 7 thereof . . . ." A81 (2:58-60). Due to the shoulder 9, the top end of the inner flange 6 of the channel will not come into contact with the outer surface of a side wall of a higher crate when crates are nested. A81-82 (2:64-3:2).



Claim 2 of the 330 patent is the only claim at issue on appeal and recites

the following (with the relevant claim limitations underlined):

Packaging for cut flowers comprising:

(a) a rectangular crate defining an interior volume, <u>the rectangular crate having sloping side walls</u>;

(b) an upwardly facing channel having a base portion disposed close to the top portion of the sloping walls, the base portion being defined by an inner flange and an outer flange and projecting outwardly of the interior volume, wherein the base of the channel is capable of supporting a foldable rectangular protective tube, the base of the channel having an upper surface and a lower surface, the lower surface of the base forms a top portion of a downward facing channel defined by an outer surface of the crate and a projection of the outer flange below the base, the downward facing channel being capable of accommodating a top edge of the protective tube and ribs of relatively low height are disposed on the top portion of the downward-facing channel; and

10

(c) <u>a shoulder projecting into the interior volume and extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel</u>.

A82 (4:13-35).

Claim 2 does not recite that <u>all</u> side walls of the claimed rectangular crate are sloping; instead it only recites that the crate has "sloping side walls." Furthermore, claim 2 does not recite the language from the specification that the shoulder is "arranged on the inside of the channel."

### D.     The District Court Proceedings

### 1.     Claim Construction

During the *Markman* proceeding, the parties disputed the proper construction of the side walls limitation and the shoulder limitation, which are reprinted below:

- "the rectangular crate having sloping side walls"; and

- "a shoulder projecting into the interior volume and extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel."

Pagter proposed that the side walls limitation be construed to mean "the rectangular crate having *at least* two sloping side walls." A282. This construction was based on the plain and ordinary meaning of the claim language. A283. The claim uses the plural term "wall<u>s</u>," which, without more, can logically only mean "at least two walls."

11

Mouldtec, on the other hand, proposed that the side walls limitation be construed to mean that "all of the walls of the crate must be sloping." A303. Mouldtec's construction was based not on the ordinary meaning of the claim language but on descriptions of a preferred embodiment in the specification. A304; A366; A407-11; A414-15. Nevertheless, the district court adopted Mouldtec's proffered construction. A2-4.

Pagter also proposed that the shoulder limitation be construed to mean "a shoulder projecting into the interior volume and extending between the top *of each of the two* sloping walls of the crate and the channel base or the bottom of the inner flange of the channel." A295. This construction merely clarifies that each sloping wall must have its own top and that the "sloping walls" from which the shoulder extends are the "at least two" walls recited in the side walls limitation. A296; A355. This is significant because it makes no sense to recite that multiple walls have a single top. Each wall (for example, in a room) has its own top.

In contrast, Mouldtec proposed a convoluted and confusing construction for the shoulder limitation, to wit, a "structure extending between and connecting the top of the sloping side wall and the bottom of the inner flange and offsetting the inner flange outwardly from the top of the sloping side wall." A308.

In its *Markman* order, the district court did not adopt either party's construction and instead found that the shoulder limitation "does not require

construction" and that the "plain and ordinary meaning of 'shoulder' controls." A5-6.

### 2.    Summary Judgment

Following claim construction and expert discovery,[1] Mouldtec moved for summary judgment of non-infringement of the 330 patent.  Mouldtec argued that the Accused Crates do not include either "an upwardly facing channel having a base portion … defined by an inner flange and an outer flange …" (the "inner flange" limitation) or the shoulder limitation.  A453.

The district court found that there was a genuine issue of material fact with respect to the inner flange limitation.  A13-14.  However, the court granted the motion because the court found that no reasonable juror could find that the Accused Crates include the shoulder limitation.  A14.  In doing so, the district court interpreted the shoulder limitation to mean that the shoulder must be "arranged on the inside of the channel" – even though the Court previously said in its *Markman* order that the shoulder limitation did not require construction – and then found that the Accused Crates did not include a shoulder arranged in such a manner.  A15.

---

[1] The district court case was conducted in the manner prescribed by the Local Patent Rules of the U.S. District Court for the Northern District of Illinois.  Under those rules, the schedule is as follows:  fact discovery, claim construction, expert discovery, and then summary judgment.  *See* N.D. Ill. Local Patent Rules.

## SUMMARY OF THE ARGUMENT

The district court's *Markman* order should be reversed. The district court erred in rejecting Pagter's construction of the side walls limitation and construing the limitation to mean that the crate must have four sloping side walls. The court's construction runs afoul of logic and grammar. The plural term "walls" means at least two walls – it does not – and cannot – mean "four" walls. The only way to arrive at the district court's construction is to narrow the claims by improper reference to the specification. The district court also erred in rejecting Pagter's construction of the shoulder limitation and instead finding that the limitation did not need construing.

The district court's summary judgment order should also be reversed because it was based on a claim construction, applied for the first time on summary judgment, that erroneously imported language from the specification with no justification. In that regard, the district court construed the shoulder limitation on summary judgment to mean that the shoulder is "arranged on the inside of the channel." In ruling that there was no genuine dispute of material fact that the accused crate did not include the shoulder limitation, the court found that the intrinsic record "indicate[s] that the shoulder is 'arranged on the inside of the channel'" and that the "accused shoulder is not 'arranged on the inside of the channel.'" A15. The shoulder limitation, however, does not recite that the

14

shoulder is "arranged on the inside of the channel," and there is no other claim language that can support this improper importation.

Moreover, by providing a new construction of the shoulder limitation for the first time in its summary judgment order, the district court denied Pagter the opportunity to present evidence in its summary judgment papers based on that new construction.

## ARGUMENT

### I.    STANDARD OF REVIEW

This Court reviews the district court's claim construction *de novo*. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*) *aff'd*, 517 U.S. 370 (1996).  This Court also reviews a grant of summary judgment *de novo*. *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1365 (Fed. Cir. 2008).  The Court must "draw[] all reasonable inferences in favor of the nonmovant," and "[s]ummary judgment is appropriate only when 'there is no genuine issue as to any material fact . . . .'" *Id.* (citation omitted).

### II.   THE COURT ERRED IN ITS CONSTRUCTION OF THE SIDE WALLS LIMITATION

The district court erroneously construed the limitation of a "rectangular crate having sloping side walls."  The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history.  *Starhome*

*GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 856 (Fed. Cir. 2014).   There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution. *Id.*   The district court's construction is not based on the ordinary and customary meaning of the claim language, and no definitions or disavowals exist in the specification or prosecution history that support the district court's construction.

## A.    The District Court's Construction Is Contrary to the Ordinary Meaning of the Claim Language

The district court's construction of the side walls limitation – the crate must have four sloping side walls (A2) – is not consistent with a skilled artisan's understanding of the customary and ordinary meaning of the word "walls."   *See Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003) ("Claim language generally carries the ordinary meaning of the words in their normal usage in the field of invention at the time of invention.").   Applying basic rules of grammar and logic, the plural word "wall<u>s</u>" must be understood to mean "at least <u>two</u> walls."   Thus, Pagter's construction of the side walls limitation – "the rectangular crate having at least two sloping side walls" (A282-285) – gives full scope to the meaning of the claim language.   *See Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment . . . .").

16

Pagter's construction is consistent with the case law. Courts consistently construe the plural form of a noun to denote "two or more." *See Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1357 (Fed. Cir. 2002) ("[T]he claim recites 'support wires' in the plural, thus requiring more than one welded 'support wire.'); *Minton v. Nat'l Ass'n of Sec. Dealers*, 197 F. Supp. 2d 699, 705 (E.D. Tex. 2001) (finding that a claim reciting an item in the plural form only requires that "two or more" of the items found in the accused product perform a claimed task, not all of the items found in the accused product); *Applera Corp. v. Micromass UK Ltd.*, 186 F. Supp. 2d 487, 519 (D. Del. 2002) ("Reading the claims alone, it is apparent that the term "guide ions through" does not require the successful transmission of all ions . . . . Indeed, the only limitation on the number of ions guided through the ion guide is the fact that 'ions' is plural and therefore there must be two or more."); *TQP Dev., LLC v. 1-800-Flowers.com, Inc.*, No. 2:11-CV-248, 2013 U.S. Dist. LEXIS 70836, at *51 (E.D. Tex. May 20, 2013) ("[T]he plural form of a noun generally refers to two or more . . . ."); *Koninklijke Philips, N.V. v. Zoll Med. Corp.*, No. 12-12255-NMG, 2014 U.S. Dist. LEXIS 113735, at *30 (D. Mass. Aug. 15, 2014) ("[The Court] will also require at least two buttons given that the term is used in the plural throughout the claims and specification.").

17

**B.    The Prior Art Shows that a Person of Skill in the Art Would Have Understood "Walls" to Mean At Least Two Walls**

The prior art further demonstrates that a person of skill in the art would have understood that the claim language of "rectangular crate having sloping side walls" is not limited to a crate having four sloping side walls. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) ("Th[e] prior art can often help to demonstrate how a disputed term is used by those skilled in the art."). In that regard, the prior art shows that it is entirely possible for a rectangular crate to have two sloping side walls and two non-sloping side walls. A336-39. For example, as shown below, U.S. Patent No. 2,659,180 (the "180 patent") discloses a rectangular crate having two sloping side walls (highlighted in purple) and two non-sloping side walls (highlighted in blue). A337.





Similarly, U.S. Design Patent No. D389,054 (the "054 patent") shown below discloses a crate having two sloping side walls (highlighted in purple) and two non-sloping side walls (highlighted in blue).  A338-39.



Thus, a person of skill in the art would have understood that each of the prior art crates shown above is a "rectangular crate having sloping side walls" as recited in claim 2.

### C.  The District Court's Construction Is Based on Language Imported from the Specification

The construction proposed by Mouldtec and adopted by the district court – *i.e.*, the crate has four sloping side walls[2] (A2) – is not based on what the words of the claim actually say.  This is improper.  *See Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Claim construction <u>begins and ends</u> in all cases with the actual <u>words of the claim</u>." (emphasis added)).  Nowhere does the side walls limitation state that "all" or "four" of the walls slope, and nothing in the word "walls" requires that "all" or "four" of the walls slope.  *See* A55 (4:15-16).

Disregarding the plain meaning of the claim language, the district court improperly based its construction on language imported from the specification and found the claim to be coextensive with the embodiment discussed in the specification.  *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) ("We do not read limitations from the specification into claims;

---

[2] Mouldtec specifically proposed that the side walls limitation be construed to mean that "all of the walls of the crate must be sloping" (A303), and the district court construed the limitation to mean that "the crate has four sloping side walls." A2.  The difference between these two constructions is negligible in view of the fact that the claim recites a "rectangular [*i.e.*, four sided] crate."  A55 (4:15-16).

we do not redefine words."). In that regard, the district court stated that the specification "makes clear that nesting [*i.e.*, fitting of one crate within another] is an essential feature of the invention." A2-3. The district court then went on to find that if all of the walls of the crate of claim 2 are not sloped, "crates would stack one on top of another rather than fit one into another," and, therefore, "[a]ll four walls must slope to nest the crates." A3.

The district court's construction is based on a misunderstanding of the law. In the case the district court cited in support of its construction, *Silicon Graphics, Inc. v. ATI Technologies, Inc.*, 607 F.3d 784 (Fed. Cir. 2010), this Court found that the specification did not suggest that the patentee intended to make an embodiment disclosed in the specification "coextensive with the claims." *Id.* at 793. Similarly, nothing in the 330 patent reflects an "inten[tion] for [claim 2] and the embodiments in the specification to be strictly coextensive." *Id.* at 792. Indeed, as the district court acknowledged, claim 2 does "not refer to nesting," (A2; A55 (4:13-35)), and nothing in the side walls limitation suggests importing the nesting language from elsewhere in the intrinsic record. *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989-90 (Fed. Cir. 1999) ("[C]laim terms cannot be narrowed by reference to the written description or prosecution history unless the language of the claims invites reference to those sources.").

## D.    The Doctrine of Claim Differentiation Weighs Against the District Court's Construction

A comparison of claim 2 to other claim language in the 330 patent strongly suggests that the applicant did not intend for claim 2 to recite a crate that is capable of nesting.  Like claim 2, independent claim 14 recites a crate having sloping side walls and a shoulder.  A56 (6:20-39).  However, claim 14 also recites that the shoulder "prevents[s] one crate from binding to another, similar crate when nested."  A56 (6:35-39).  Thus, when drafting the claims, the applicant specifically chose to recite the nesting capability in claim 14 but not in claim 2.  As such, there is a presumption that the nesting language should not be read into claim 2.  *See Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999) ("The doctrine of claim differentiation . . . is ultimately based on the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope . . . .").

## E.    Nothing in the Specification Requires Limiting the Scope of Claim 2 to a Crate Having Four Sloping Side Walls

While the specification does describe the preferred embodiment of the crate as being "nestable in a similar crate" (A81 (2:47-48)), there is no evidence in the specification that Pagter intended to limit the scope of claim 2 to be coextensive with the preferred embodiment.  *See Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1376 (Fed. Cir. 2006) ("[T]his court has repeatedly rejected the contention

that depiction of a single embodiment in a patent necessarily limits the claims to that depicted scope."); *Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1367 (Fed. Cir. 2003) ("[L]imitations may not be read into a claim from a preferred embodiment when the claim language is broader than that embodiment.").

In that regard, the specification does not use "expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope" to limit the scope of the claims only to a crate capable of nesting. *See Retractable Techs. Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) (such expressions are required in order to limit claim scope); *Thorner*, 669 F.3d at 1366-67 ("To constitute disclaimer, there must be a clear and unmistakable disclaimer."). Likewise, nowhere does the specification define the "invention" as a crate having side walls that all must be sloping. In fact, in the one place where the specification does describe the "invention" generally, the specification does not refer to nesting. A81 (1:3-8) ("The invention relates to a packaging for cut flowers comprising: a rectangular crate with sloping side walls which are provided close to their top walls with a channel that projects outwards and is open at the top, the base of which channel serves to support a foldable protective tube.").

While the district court points to language in the specification stating that "[t]he aim is so to improve the packaging mentioned in the preamble that the crates

23

can be nested deeply into one another" (A3, A81 (1:26-29)), it is well settled that "the fact that the inventor may have anticipated that the invention would be used in a particular way does not mean that the scope of the invention is limited to that context." *Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1355 (Fed. Cir. 2003); *see also E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003) ("The court's task is not to limit claim language to exclude particular devices because they do not serve a perceived 'purpose' of the invention.").

Moreover, patentees are "not required to include within each of their claims all of the[] advantages or features described as significant or important in the written description." *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004). The "aim" of improving packaging so that it can be deeply nested is but only <u>one</u> objective or purpose identified in the 330 patent. The specification describes other significant objectives, such as (1) the "purpose of the rectangular tube [being] to protect . . . flowers placed in the crate," (2) the shoulder "serv[ing] as a support for a rectangular presentation collar . . . is important in particular in the case of somewhat longer cut flowers," and (3) the "protective tube can be utilized to support the crate" by being inserted into "a channel open at the bottom." A81 (1:11-12; 1:35-38; 1:51-59).

Given that claim 2 recites a crate with specific objectives – that is, having an upwardly facing channel that can support a rectangular tube to protect flowers and

a downward facing channel that can accommodate the top edge of a protective tube – there is no reason to require the crate of claim 2 to be structured to achieve the additional objective of nesting, which was purposely <u>not</u> recited in the claim.  A82 (4:17-22, 4:27-31).  *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 908 (Fed. Cir. 2004) ("The fact that a patent asserts that an invention achieves several objectives does not require that each of the claims be construed as limited to structures that are capable of achieving all of the objectives.").  Again, this is especially true in view of the fact that another independent claim, claim 14, specifically recites the features of nesting and binding.  A83 (6:35-39).

Accordingly, the plain and ordinary meaning of the word "wall<u>s</u>" (*i.e.*, at least two walls), the teachings of the prior art, the doctrine of claim differentiation, and the lack of an explicit statement in the specification defining the invention as a nestable crate all weigh heavily against the district court's construction of the side walls limitation.  This court should reverse the district court's *Markman* order and order the district court to adopt Pagter's construction of the side walls limitation on remand.

## III.    THE COURT ERRED IN ITS CONSTRUCTION OF THE SHOULDER LIMITATION

In both originally finding that the shoulder limitation did not require construction and then later construing the shoulder limitation to mean that the

shoulder is "arranged on the inside of the channel," the district court committed reversible error.

### A.    The District Court's *Markman* Order Erred in Finding that the Shoulder Limitation Did Not Require Construction

The district court was incorrect in finding in its *Markman* order that the shoulder limitation does not require construction.  A5.  The shoulder limitation includes a grammatical error and thus requires construction for clarification.  *See* A296.  In that regard, the shoulder limitation recites, in part, "a shoulder . . . extending between the *top* of the sloping *walls* of the crate and the channel base . . . ."  A82 (4:32-35) (emphasis added).  However, a shoulder extending between the *top* (singular) of sloping *walls* (plural) and the channel base makes no sense because multiple walls cannot have or share a single "top."  Instead, as shown below, each wall in a structure necessarily must have its own individual "top" (as represented by a different color).  A341; A446.



Pagter's proposed construction of the shoulder limitation – "a shoulder projecting into the interior volume and extending between the top *of each of the two* sloping walls of the crate and the channel base or the bottom of the inner flange of the channel" – accounts for the grammatical error in the limitation and clarifies that each wall has its own "top." A295-96; *see also In re Hyatt*, 708 F.2d 712, 714 (Fed. Cir. 1983) ("A claim must be read in accordance with the precepts of English grammar.); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of . . . clarify[ing] and when necessary . . . explain[ing] what the patentee covered by the claims . . . ."). It further clarifies that the "sloping walls" are the "at least two" sloping walls of the side walls limitation. A296. In this way, Pagter's proposed construction comports

with what a person of skill in the art would have understood to be the full scope of the limitation.

**B.    The District Court Erred Again In Finding On Summary Judgment That the Shoulder Limitation Requires the Shoulder to be Arranged on the Inside of the Channel**

The district court's summary judgment ruling of non-infringement should be reversed because it is based entirely on an erroneous construction of the shoulder limitation.[3]   In its summary judgment order, the district court stated that it had "refused to construe the shoulder limitation" (A14), but then went on to construe the shoulder limitation to mean that the shoulder is <u>arranged on the inside of the channel</u>.  In particular, the district court stated that "the patent figures, the other language of claim 2, and the specifications [sic] all indicate that the shoulder is 'arranged on the inside of the channel' . . . ." A15.  In granting Mouldtec's motion, the court found that the "accused shoulder is not 'arranged on the inside of the channel' and does not protrude from any part of the channel." A15.

This new construction relied upon by the district court on summary judgment is too narrow.  Nowhere does the language of the shoulder limitation suggest that the shoulder must be "arranged on the inside of the channel" or

---

[3] *See Acumed L.L.C. v. Stryker Corp.*, 483 F.3d 800, 804 (Fed. Cir. 2007) ("A finding of patent infringement requires a two-step process:  first, the court determines the meaning of the disputed claim terms; then the accused device is compared to the claims as construed to determine infringement.").

28

otherwise exclude a shoulder located below the channel.  Rather, the limitation recites that the shoulder "extend[] between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel."  A82 (4:32-35).  In other words, the language of the shoulder limitation merely requires that the shoulder extend from <u>somewhere between</u> the top of a sloping wall and one of (i) the channel base and (ii) the bottom of the inner flange of the channel.  Thus, the shoulder limitation covers a shoulder that projects inwardly from a position located somewhere <u>above</u> a top of a sloping wall and somewhere <u>below</u> the base of a channel.  In such an orientation, the shoulder would be located <u>below</u> the channel – not "arranged on the inside of the channel."

Moreover, a person of skill in the art would have understood that the ordinary language of the shoulder limitation, given its full scope, covers a shoulder that is located either "vertically" or "horizontally" between the top of the side wall and the channel base or bottom of the inner flange.  For example, the two pictures of the Accused Crate on the left below show how the shoulder (highlighted in green) extends <u>horizontally between</u> the side wall (highlighted in red) and the channel base (highlighted in purple)/inner flange (highlighted in blue).  A1009.  The two pictures on the right show how the shoulder extends <u>vertically between</u> the side wall and the channel base/inner flange.



Instead of relying on the ordinary meaning of the language of the shoulder limitation, the district court improperly based its construction on language imported from the specification. In fact, the language about the shoulder being "arranged on the inside of the channel" was lifted <u>verbatim</u> from the specification. A81 (2:58). Nowhere, however, does the specification define or disavow the scope of the shoulder such that it must be arranged on the inside of the channel. Therefore, the district court's construction cannot be correct. *See Kara Tech.*, 582 F.3d at 1348 ("[W]e will not limit [the patentee] to his preferred embodiment or import a limitation from the specification into the claims.").

Because the district court applied an incorrect construction of the shoulder limitation on summary judgment, this Court should reverse the district court's summary judgment order and order the district court to adopt Pagter's construction of the shoulder limitation on remand.

**C.    Even if, *Arguendo*, the District Court Did Not Err in its Construction of the Shoulder Limitation, Pagter Should be Allowed to Present Evidence Based on the New Construction on Remand**

Alternatively, even if this Court does not find that the district court applied the wrong construction of the shoulder limitation on summary judgment, procedural fairness requires that this Court still reverse the district court's summary judgment decision.  A finding of infringement requires the steps of construing the claim and then applying the claim, <u>as construed</u>, to the accused product.  Pagter, however, was not able to present evidence on summary judgment regarding whether the Accused Crate included a shoulder that is "arranged on the inside of the channel" because the district court used that construction for the first time in its summary judgment order.  Instead, Pagter relied on the constructions found in the district court's *Markman* order (which said that the shoulder limitation did not require construction) in arguing in its summary judgment papers that the Accused Crate includes a shoulder.

Accordingly, by basing summary judgment on a claim construction with respect to which Pagter did not have notice and was not able to present evidence, the district court deprived Pagter of basic procedural protections.  *See Chicago Truck Drivers v. El Paso CGP Co.*, 525 F.3d 591, 603 (7th Cir. 2008) ("[T]he district court may enter judgment on a ground not contained in the [summary judgment] motion '<u>if the parties have had an adequate opportunity to argue and</u>

31

present evidence on that point and summary judgment is otherwise appropriate.'").[4]

Therefore, if this Court should decide to uphold the construction of the shoulder limitation found in the district court's summary judgment order, it should still remand the case and order the district court to allow Pagter to obtain and present new evidence in support of its infringement claim under this new construction.

## IV. CONCLUSION

For the reasons stated above, Pagter respectfully requests that this Court reverse the district court's claim construction and summary judgment rulings.

December 28, 2015                    Respectfully submitted,

                                   /s/ Patrick J. Arnold Jr.
                                   Patrick J. Arnold Jr.
                                   David Z. Petty
                                   MCANDREWS, HELD & MALLOY, LTD.
                                   500 W. Madison Street, Suite 3400
                                   Chicago, Illinois 60661
                                   (312)775-8000

                                   **Counsel for Pagter & Partners International B.V. and Pagter Innovations, Inc.**

---

[4] When analyzing a procedural issue not unique to patent law, this Court applies the law of the applicable regional circuit, here the Seventh Circuit. *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 647 (Fed. Cir. 2015).

ADDENDUM

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| MOULDTEC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 12 C 4249 |
| | ) | |
| PAGTER & PARTNERS INTERNATIONAL | ) | Judge Virginia M. Kendall |
| B.V., and PAGTER INNOVATIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## CLAIM CONSTRUCTION ORDER

Plaintiff Mouldtec, Inc. seeks a declaratory judgment that it does not infringe United States Patent No. 6,581,330. (Dkt. No. 10.) Mouldtec filed its declaratory judgment action against Defendants Pagter & Partners International B.V. and Pagter Innovations, Inc. Defendant Pagter International, which owns the '330 Patent, filed a counter-claim against Mouldtec alleging direct and indirect patent infringement. The parties differ as to the meaning of several claim terms found in claims 2 and 4 of the '330 Patent. Based on the evidence and arguments presented by the parties in their pleadings and during a claim construction hearing, this Court construes the disputed claim terms as stated below.

## LEGAL STANDARD

Claim construction is a matter of law. *Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 734 (Fed. Cir. 2014). A claim term generally takes it ordinary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and the prosecution history. *Id.* (citing *Thorner v. Sony Computer Entertainment America, LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). This is true unless the patentee either gave the term a different

definition or otherwise disclaimed the ordinary meaning of the term in the pertinent context. *Ancora Techs., Inc.*, 744 F.3d at 734.

Here, neither party has identified the person of ordinary skill in the art in their briefs. When asked at oral argument, the Pagter Defendants stated "it's probably a medium level of skill person who is mechanical and knows something about buckets." Hr'g Tr. at 52:3-8 (Jan. 29, 2014). Mouldtec added that a person of ordinary skill in the art would understand injection moulding because that is the process used to make the products at issue. *Id.* at 59:2-12. Because neither party has submitted any evidence that a person of ordinary skill in the art would understand any of the disputed terms to have special, technical meanings in their field, this Court makes no findings as to the level of ordinary skill in the art and will apply the widely accepted meanings of the disputed terms in view of the specification and prosecution history. *See Retractable Technologies, Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1312 (Fed. Cir. 2011) ("In this case, neither party contends that 'body' has a special, technical meaning in the field of art, and thus claim construction requires 'little more than the application of the widely accepted meaning of commonly understood words.' ").

## DISCUSSION

### A.     The "Sloping Walls" Limitation

Within the context of the '330 Patent, "the rectangular crate having sloping side walls" limitation means that the crate has four sloping side walls. The parties' dispute essentially concerns the number of sloping side walls required by the claim term. Mouldtec argues that all of the walls of the crate must slope upward at an angle whereas the Defendants argue that the claim requires at least two sloping side walls.

The invention, which relates to packaging for cut flowers, is essentially a nestable crate. Although claims 2 and 4 do not refer to nesting, the specification makes clear that nesting is an

essential feature of the invention. In describing the invention generally, the specification states "[t]he aim is so to improve the packaging mentioned in the preamble that the crates can be nested deeply into one another without the risk of binding." '330 Patent at 1:26-29. The invention purports to counteract any such binding with a shoulder that extends from the top edge of the sloping side walls. *Id.* at 1:30-34. Both claims 2 and 4 of the '330 Patent disclose such shoulders. These shoulders are there to prevent binding, which the specification indicates occurs when one nests the crates.

All four walls must slope to nest the crates. Otherwise, the crates would stack one on top of another rather than fit one into another. *See, e.g.*, '330 Patent at 3:50-53 (explaining that ribs slope so that they are able to nest). Because nesting is a critical aspect of the invention, which the specification describes generally before describing any preferred embodiments, construing the claims to require a nesting crate does not import a limitation from the specification into the claims. *See Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 792 (Fed. Cir. 2010) (explaining that construing courts should not import limitations from the specification unless the patentee intended for the claim and the embodiments disclosed in the specification to be coextensive). Rather, it reflects the purpose underlying the "sloping side walls" and the "shoulder projecting" limitations.

And the doctrine of claim differentiation does not require the Pagter Defendants' proposed construction. "[C]laim differentiation is a rule of thumb that does not trump the clear import of the specification." *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1332 (Fed. Cir. 2009). As discussed above, the specification of the '330 Patent makes clear that nesting is a general feature of the invention. Although claim 14 is the only claim that specifically references that feature, it does so in a limitation otherwise shared with claims 2 and 4. Claim 14 differs from

claims 2 and 4 in other, more significant ways, particularly with respect to "ribs." The "ribs" disclosed in claim 14 are "beneath the upwardly facing channel" whereas the ribs disclosed in claim 2 are on the "top portion of the downward-facing channel" and the ribs disclosed in claim 4 are on the cover.

### B.    The "Upwardly Facing Channel" Limitation

The "an upwardly facing channel having a base portion disposed close to the top portion of the sloping walls" limitation does not require construction. The primary dispute as to this term relates back to the first disputed claim term concerning the number of sloping walls. Setting aside this issue, the parties proposed constructions do not differ much from each other or from the claim language. This is not surprising, considering that the meaning of the disputed claim term is apparent from the claim language. Therefore, this Court will not construe this claim term beyond the previously construed "sloping walls" limitation.

### C.    The "Inner Flange" Limitation

The "base portion being defined by an inner flange and an outer flange and projecting outwardly of the interior volume" limitation does not require construction. The parties' dispute primarily concerns the meaning of "inner flange." Mouldtec argues that "inner flange" requires construction but then does not define "flange." Instead, Mouldtec apparently proposes a meaning for "inner" by describing where the "inner flange" is in relation to the shoulder. In contrast, the Defendants' substitute the word "rim" for "flange." The Defendants base this substitution on the dictionary meaning of the word "flange."

Despite Mouldtec's objection to the use of the dictionary as an improper reference to extrinsic evidence, courts may rely on the dictionary meaning of a term provided that meaning does not contradict any definition found in the patent or the prosecution history. *Starhome GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 856 (Fed. Cir. 2014). Flange is a commonly used word

that the dictionary defines as a rim or lip. There is nothing in the patent or prosecution history that contradicts this meaning. Nor did Mouldtec submit any evidence that a person of ordinary skill in the art would understand flange to mean something else. Because flange is a commonly used word, this Court sees no need to construe it. This Court addresses the relationship between the flange and the shoulder below in its discussion of the "shoulder" limitation.

### D.      The "Ribs of Relatively Low Height" Limitation

The "capable of accommodating" limitation does not require construction. Whereas Mouldtec argues that no construction is necessary, the Pagter Defendants construe "accommodating" to mean "holding." Accommodating is a commonly used word whose plain and ordinary meaning is to have or make room for. Because neither the patent nor the prosecution history ascribes any particular meaning to accommodating, this plain and ordinary meaning controls.

At argument, Mouldtec agreed to accept the Pagter Defendants' proposed construction of "ribs of relatively low height," which is "of a height that is no more than half the height of the downward facing channel." Hr'g Tr. at 63:2-11. This Court accepts that construction.

### E.      The "Shoulder" Limitation

The "shoulder" limitation does not require construction. Mouldtec seeks to construe this limitation as a structure "connecting" and "offsetting" the sloping side wall and the inner flange. Rather than construe "shoulder," the Pagter Defendants seek to inject their belief that the "sloping walls" limitation only requires two sloping walls into the "shoulder" limitation. Neither parties' proposed constructions are necessary as Mouldtec's merely re-characterizes existing claim language—that is, "extending between" indicates that the shoulder connects and offsets the sloping walls and the inner flange—and this Court has rejected the Pagter Defendants' belief regarding the number of sloping walls required. Setting aside its anatomical meaning, the term

shoulder generally connotes some sort of lateral protrusion. This meaning is consistent with the patent and the prosecution history, and the claim language clarifies the location of this feature. Therefore, the plain and ordinary meaning of "shoulder" controls.

### F.    The "Ribs" and "Ridges" Limitations

Neither "ribs" nor "ridges" require construction. Although Mouldtec argues that these terms do not require construction, the Pagter Defendants construe "ribs" to mean "objects resembling ribs in shape or function" and "ridges" to mean "elevated body parts or structures." The Pagter Defendants' proposed constructions are unnecessary because they are not helpful. Ribs and ridges are commonly used terms that indicate raised parts on a surface. Here, the specification differentiates the two by function: ribs are used to reinforce, '330 Patent at 1:47-48, and ridges used to position, '330 Patent at 2:6-10. Because each of the asserted claims provide sufficient context to reflect these functions, there is no need to construe either term.

### G.    The "Topographic Grid Pattern" Limitation

The "topographic grid pattern" limitation means a multi-leveled grid pattern. Mouldtec does not believe that this term requires construction. The Pagter Defendants argue that this term means "a grid pattern configuration." The use of both "pattern" and "configuration" is redundant and, therefore, unnecessary. In addition, the Pagter Defendants' proposed construction is incomplete as it omits "topographic." As generally understood, topographic implies raised and lowered surfaces. In other words, topographic means not flat. This is consistent with the claim language as the purpose of the topographic grid pattern is to provide a ventilation gap.

_____ _Virginia M. Kendall_ _____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date:  June 4, 2014

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| MOULDTEC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12 C 4249 |
| | ) | |
| PAGTER & PARTNERS INTERNATIONAL | ) | Judge Virginia M. Kendall |
| B.V., and PAGTER INNOVATIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mouldtec, Inc. filed this four-count complaint against Pagter & Partners International B.V. and Pagter Innovations, Inc. for declaratory judgment of patent non-infringement, patent invalidity, tortious interference with a business relationship, and attorney fees. Defendant Pagter International, which owns the subject patent, filed a counterclaim against Mouldtec alleging direct and indirect patent infringement. Mouldtec now moves for summary judgment that claim 2 of U.S. Patent No. 6,581,330 ("the '330 patent") is invalid under 35 U.S.C. §103 because differences between the prior art and the subject matter claimed would have been obvious to one of ordinary skill in the art. It also moves for summary judgment of non-infringement with respect to claims 2 and 4 of the '330 patent. For the following reasons, Mouldtec's motion for summary judgment of non-infringement is granted. Its motion for summary judgment of invalidity is dismissed as moot.[1]

---

[1] The parties have agreed that Pagter concedes summary judgment as to claim 4 and that Mouldtec "drops" its declaratory judgment claims for invalidity under 35 U.S.C. § 112 and tortious interference. (Dkt. No. 133, Non-Infringement Resp. at 1). The Court therefore enters judgment in favor of Mouldtec that claim 4 is non-infringing and grants what appears to be Mouldtec's motion pursuant to Fed. R. Civ. P. 41 to voluntarily dismiss its tortious interference claim and claim for invalidity under 35 U.S.C. § 112. *See Tolls v. Carroll Touch, Inc.*, 23 F.3d 174, 177 (7th Cir. 1994) (district court has discretion to grant or deny motion to dismiss pursuant to Rule 41). The only issues now before the Court on summary judgment are the infringement and validity of claim 2 of the '330 patent.

## I. BACKGROUND

The following facts are undisputed unless otherwise noted. This dispute arises over a patent for packaging cut flowers owned by Pagter, the '330 Patent. (Dkt. No. 134, Def. 56.1 Non-Infringement Resp., ¶ 2). The complete packaging structure can be seen in Figures 1 and 2 below. The two basic parts of the complete packaging structure are what the '330 Patent refers to as the "rectangular crate" and the "protective tube." The protective tube can be placed on top of the rectangular crate to protect the flowers during transport or around the rectangular crate to reveal the flowers during their display.



**Figure 1**. "[P]erspective view of a complete flower packaging according to the invention in the transport position." (Dkt. No. 46-1, Patent '330 at 3).



**Figure 2**. "[P]erspective view of a complete flower packaging according to the invention in the presentation position for long cut flowers." (Dkt. No. 46-1, Patent '330 at 3).

The specific dispute before this Court concerns only claim 2 of the '330 Patent. (*See* Dkt. No. 133, 2). Mouldtec seeks a declaration that claim 2 of the '330 Patent is invalid and that its

2

**A8**

accused product does not infringe claim 2. (*See id.*; *see also* Dkt. No. 132, Def. 56.1 Invalidity Resp., ¶¶ 1, 3). Claim 2 states:

> 2. Packaging for cut flowers comprising:
>
> (a) a rectangular crate defining an interior volume, the rectangular crate having sloping side walls;
>
> (b) an upwardly facing channel having a base portion disposed close to the top portion of the sloping walls, the base portion being defined by an inner flange and an outer flange and projecting outwardly of the interior volume, wherein the base of the channel is capable of supporting a foldable rectangular protective tube, the base of the channel having an upper surface and a lower surface, the lower surface of the base forms a top portion of a downward facing channel defined by an outer surface of the crate and a projection of the outer flange below the base, the downward facing channel being capable of accommodating a top edge of the protective tube and ribs of relatively low height are disposed on the top portion of the downward-facing channel; and
>
> (c) a shoulder projecting into the interior volume and extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel. (Dkt. No. 132, Def. 56.1 Invalidity Resp., ¶ 5).

Claim 2 describes a rectangular crate with an upward facing channel and downward facing channel; both of which may accommodate a protective tube. (*Id*. at ¶ 6). Figure 1 above illustrates a protective tube **2** in an upward facing channel of the crate **1** and a cover **3** placed on the tube for transporting flowers. (*Id*. at ¶ 7). Figure 2 illustrates a protective tube **2** placed in a downward facing channel for displaying flowers. (*Id*. at ¶ 8).

Mouldtec's accused products, the "Tazza" and "Secchio" flower containers, have the same relevant structures and function in the same way as the protected packaging; the primary difference between the Tazza and the Secchio is their size. (Dkt. No. 134, Def. 56.1 Non-Infringement Resp., ¶ 4). The parties' infringement dispute, however, focuses primarily on whether a reasonable jury could find that the accused products have the following highlighted limitations included in claim 2:

3

**A9**

* * * * *

(b) **an upwardly facing channel having a base portion** disposed close to the top portion of the sloping walls, the base portion being **defined by an inner flange and an outer flange** […]

(c) **a shoulder** projecting into the interior volume and **extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel**. (Dkt. No. 132, Def. 56.1 Invalidity Resp., ¶ 5) (emphasis added).

The Figure 5 below shows a cross-section of two patented crates nesting in one another. Figure 6 shows a cross-section of the accused product.





**Figure 5**. "[C]ross-section through a side wall section of two crates nested in one another." (Dkt. No. 46-1, Patent '330 at 3).

**Figure 6**. Accused Mouldtec crate. (Dkt. No. 138, Pl. 56.1 Infringement Resp., ¶ 2).

On June 4, 2014, this Court entered an order construing certain disputed claim terms. Mouldtec now moves for summary judgment on its patent invalidity and non-infringement claims.

## II. STANDARD OF REVIEW

"Summary judgment is proper when, viewing all facts and inferences in favor of the nonmoving party, no genuine dispute as to material fact exists, and the moving party is entitled to judgment as a matter of law." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Whether a fact is material depends on the underlying substantive law that governs the dispute. *Id.* A genuine dispute is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter; rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") (internal quotation marks omitted).

## III. DISCUSSION

### A. Infringement[2]

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States ... infringes the patent." 35 U.S.C. § 271(a) (2006). Finding patent infringement requires a two-step process. First, the court must construe the claims alleged to be infringed. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*,

---

[2] The Court declines to strike "at least page 16" of Mouldtec's Motion for Summary Judgment of Non-Infringement for failing to comply with the page limitation under the Local Rules. Although this Court has substantial discretion to require strict compliance with the Local Rules, including page limitations, such a severe sanction is not warranted in this case. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (citing *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000)) ("Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment.").

363 F.3d 1263, 1273 (Fed. Cir. 2004). Second, the court must compare the construed claims to the allegedly infringing product. *Id.* Having already construed the disputed terms in its June 4, 2014 order, the Court now considers whether each limitation in claim 2 of the '330 patent is found in the accused products, either literally or under the doctrine of equivalents. *See Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1356–57 (Fed. Cir. 2005).

Mouldtec does not have the burden of proof on the issue of infringement, but Mouldtec "nonetheless bears the initial burden of coming forward with sufficient evidence to demonstrate that there is no material issue of fact that would preclude summary judgment, and that it is entitled to judgment as a matter of law." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 806 (Fed. Cir. 1999). In response, Pagter does not "have the burden of establishing that it is entitled to judgment in its favor; it need only show either that the movant did not establish that it is entitled to judgment on undisputed facts or on the opposer's version of the facts, or that there are material issues of fact which require resolution at trial." *Id.* at 806-07.

In this case, Mouldtec argues that no reasonable jury could find that the accused products have the limitations highlighted below in claim 2 of the '330 patent:

> (b) **an upwardly facing channel having a base portion** disposed close to the top portion of the sloping walls, the base portion being **defined by an inner flange and an outer flange** and projecting outwardly of the interior volume, wherein the base of the channel is capable of supporting a foldable rectangular protective tube, the base of the channel having an upper surface and a lower surface, the lower surface of the base forms a top portion of a downward facing channel defined by an outer surface of the crate and a projection of the outer flange below the base, the downward facing channel being capable of accommodating a top edge of the protective tube and ribs of relatively low height are disposed on the top portion of the downward-facing channel; and

> (c) **a shoulder** projecting into the interior volume and **extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel**. (Dkt. No. 132, Def. 56.1 Invalidity Resp., ¶ 5) (emphasis added).

6

**A12**

In determining whether there is infringement, this Court will compare the claims, as construed, with the accused products.

### 1. Inner Flange

"Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when 'the properly construed claim reads on the accused device exactly.' " *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1358 (Fed. Cir. 2000) (quoting *Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)). Here, a genuine issue of material fact exists as to whether the "upwardly facing channel having a base portion [...] defined by an inner flange and an outer flange" limitation ("inner flange limitation") literally reads on the accused products.



The parties' primary dispute over this limitation is whether the inner wall of the upward-facing channel in the accused product is defined by an "inner flange." In its claim construction order, this Court refused to construe "flange," instead relying on the dictionary definition of flange as a "rim" or "lip" in considering the limitation. *See Mouldtec*, 2014 WL 4262633, at *3. The inner wall of the accused product's upward-facing, as seen in Figure 6, certainly appears to satisfy this limitation. Mouldtec insists, however, that the '330 patent "describes and depicts the inner flange as a separate and distinct structure from the sloping side wall of the crate." (Dkt. No. 128, at 8). The use of two terms in a patent only means that they connote different meanings; "not that they necessarily refer to two different structures." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n. 3 (Fed. Cir. 2006) (internal quotation marks and

**Figure 6**. Cross-section of upward-facing channel in accused Mouldtec crate. (Dkt. No. 138, Pl. 56.1 Infringement Resp., ¶ 2).

citation omitted). To demonstrate that the terms refer to different structures, the moving party must present evidence dictating the same—such as "prosecution history, specifications, comparison with other claims in the patent, and other evidence." *Id.* (internal quotation marks and citation omitted). In this case, there is insufficient evidence to allow the Court to determine as a matter of law that the inner wall of the accused product's upward-facing channel is, necessarily, a flange separate and distinct from the sloping side wall. *See Yufa v. Lockheed Martin, Co.*, 575 F. App'x 881, 886 (Fed. Cir. 2014) (citation omitted) (summary judgment on infringement or non-infringement is proper if "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.").

### 2. Shoulder

The Court grants Mouldtec's motion for summary judgment with respect to non-infringement on the basis that no reasonable juror could find that the accused products contain a shoulder "extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel." This Court refused to construe the shoulder limitation, instead finding that the plain and ordinary meaning of shoulder as "some sort of lateral protrusion" controlled and that the claim language clarifies the location of the shoulder. *See Mouldtec*, 2014 WL 4262633, at *3. Claim 2 describes the shoulder as located "between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel." Figures 5 and 7 illustrate: "shoulder **9** is arranged on the inside of the channel, **5**, **6**, **7** open at the top, approximately at the height of the base **7** thereof, which shoulder **9**, as can be seen from the plan view in FIG. 7, is broadest at the corners of the crate and gradually narrows towards the middle of the side walls of the crate." (Dkt. No. 46-1, Patent '330 at 12). Regardless of whether the "channel base" and "bottom of the inner flange of the channel" refer to the same

precise portion of the channel structure, the patent figures, the other language of claim 2, and the specifications all indicate that the shoulder is "arranged on the inside of the channel" and can "serve as a support for a rectangular presentation collar." (*Id.*)



**Figure 5**. "[C]ross-section through a side wall section of two crates nested in one another." (Dkt. No. 46-1, Patent '330 at 5).

**Figure 7**. "[P]lan view of the crate." (Dkt. No. 46-1, Patent '330 at 9).

The "shoulder" in the accused products, however, does not extend between the channel base or the bottom of the inner flange of the channel and any other component of the crate. Figure 8 shows the accused shoulder extending between a recessed wall and non-recessed wall; always below the channel. (*See, e.g.,* Group Figure 2). Even in the picture in Figure 6 above, relied upon heavily by Pagter, there is a distinct gap between the top of the accused shoulder and bottom of the channel. The accused shoulder is not "arranged on the inside of the channel" and does not protrude from any part of the channel. The claim language clarifies the location of the shoulder limitation in claim 2, as do the patent figures and specifications. The Court need not and cannot turn to extrinsic evidence, such as expert reports, to clarify what these publically-

available documents already clearly
establish. *See Vitronics Corp. v.
Conceptronic, Inc.*, 90 F.3d 1576, 1583
(Fed. Cir. 1996) ("Allowing the public
record to be altered or changed by extrinsic
evidence at trial, such as expert testimony,



**Figure 8**. Pagter's labelled version of accused crate. (Dkt. No. 133, Infringe. Resp. at 12).

would make this right [*i.e.* for competitors to rely on the public record] meaningless."). Because
the accused products do not have a lateral protrusion "extending between the top of the sloping
walls of the crate and the channel base or the bottom of the inner flange of the channel," no
reasonable jury could find that they contain the shoulder limitation in claim 2 of the '330 patent.



**Group Figure 2**. Various views of accused crate. (Dkt. No. 129-2, at 39, 49).

Pagter's infringement argument regarding the shoulder limitation is not saved by the
doctrine of equivalents.[3] The "test of equivalence of a proposed substitute for a missing element

---

[3] The Court refuses to strike this argument as untimely. It is elementary that infringement must be shown literally or
under the doctrine of equivalents. Claim vitiation is not an exception to the doctrine of equivalents and need not
necessarily be disclosed under the Local Patent Rules as a non-infringement contention unless its omission would
somehow render the Non-Infringement Contentions unresponsive. *See* L.P.R. 2.3(a). More importantly, even if this
argument were untimely, precluding Mouldtec from pursuing its doctrine of equivalents theory would only be

is ordinarily a factual inquiry reserved for the finder of fact." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012). The Court, however, must "ensure that the doctrine of equivalents is not permitted to overtake the statutory function of the claims in defining the scope of the patentee's exclusive rights." *Id*. "Vitiation" of a claim element—as Mouldtec asserts in this case—is not an exception to the doctrine of equivalents, but rather a "legal determination that the evidence is such that no reasonable jury could determine two elements to be equivalent." *Id*. (internal quotation marks and citation omitted). The "proper inquiry for the court is to apply the doctrine of equivalents, asking whether an asserted equivalent represents an insubstantial difference from the claimed element, or whether the substitute element matches the function, way, and result of the claimed element." *Id*. (internal quotation marks and citation omitted). In this case, no reasonable jury could find equivalence between the accused shoulder and the shoulder limitation of claim 3 in the '330 patent.

Pagter claims that Mouldtec's vitiation argument fails because it "…does not address the substantial evidence found in Pagter's infringement contentions and the report of Pagter's expert as to why a person of skill in the art would understand that the Accused Crate includes structures that satisfies the 'function, way, result' test with respect to the shoulder limitation.'" (Dkt. No. 133, 15-16). In support, Pagter directs the Court to Dr. Kazmer's report where he discusses the location of the "top of the sloping side wall" and the existence of a "side wall having a shoulder" on the accused crates. Dr. Kazmer's report and the rest of the record, however, contain no evidence demonstrating that a shoulder in a location other than that specified in claim 2 of the

---

appropriate if Pagter were prejudiced by the fact that this theory was not contained in Mouldtec's Final Infringement Contentions. *See, e.g., U.S. Gypsum Co. v. LaFarge N. Am., Inc.*, 508 F. Supp. 2d 601, 619-20 (N.D. Ill. 2007) adhered to in relevant part on reconsideration, No. 03 C 6027, 2007 WL 2091020 (N.D. Ill. July 18, 2007); *United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, 230 F.R.D. 538, 541–42 (N.D .Ill. 2005). Pagter has not claimed any prejudice, such as incomplete discovery or time to prepare, and the Court cannot identify any such prejudice from the record. A sanction, therefore, is not warranted.

'330 patent would be equivalent to a shoulder in the claim 2 location. This is not a case of a mere "binary" choice in which an element of the claim is either present or not present: a failure to limit the location of the shoulder to some functional equivalent other than that set forth in claim 2 would inappropriately vitiate the claim 2 limitation requiring the shoulder be placed in a specific location on the crate. *See, e.g., Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1362 (Fed Cir. 2005) (finding that all support members capable of allowing translational and rotational motion would entirely vitiate limitation requiring "slidably mounted" member); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) (holding that finding all shapes to be equivalent structure would entirely vitiate the limitation requiring a "generally conical shape"); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed.Cir.1997) (finding that the patentee's argument that a limitation of an "elongated slot at the top of the container body" included a slot located in the interior of the container would vitiate that limitation).

     Moreover, there is an additional concern in this case that the public reasonably relies on patents of simple structures. The flower crates protected by the '330 patent, though creative in their design, involve relatively simple designs and obvious structures. The patentees chose the language describing the shoulder location and chose to describe that location in a specific way as to allow it to support the rectangular presentation collar. Accordingly, to now say the shoulder limitation includes other shoulder locations would, under the doctrine of equivalents, "unjustly undermine the reasonable expectations of the public." *Freedman*, 420 F.3d at 1362, *citing Sage Prods.*, 126 F.3d at 1425 ("Given a choice of imposing the higher costs of careful prosecution on patentees, or imposing the costs of foreclosed business activity on the public at large, this court believes the costs are properly imposed on the group best positioned to determine whether or not a particular invention warrants investment at a higher level, that is, the patentees."); *see also*

*Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994) ( "The doctrine of equivalence cannot be used to erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.' " (citation omitted)). Accordingly, the Court concludes that the accused products do not contain the shoulder limitation, either literally or under the doctrine of equivalents. *See Deere*, 703 F.3d at 1356 (internal quotation marks and citation omitted) ("If no reasonable jury could find equivalence, then the court must grant summary judgment of no infringement under the doctrine of equivalents.").

### B. Invalidity

Based on its finding of non-infringement, the Court declines to exercise jurisdiction over Mouldtec's claim for invalidity and dismisses it as moot. This Court has the discretion to dismiss an invalidity claim for lack of jurisdiction where it finds non-infringement. *See AstraZeneca LP v. Breath Ltd.*, 542 F. App'x 971, 981 (Fed. Cir. 2013) ("[A] district court can dismiss an invalidity counterclaim when it finds noninfringement or dismisses an infringement claim with prejudice."), citing *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1371 (Fed. Cir. 2004) ("A district court judge faced with an invalidity counterclaim challenging a patent that it concludes was not infringed may either hear the claim or dismiss it without prejudice, subject to review only for abuse of discretion."); *Nystrom v. TREX Co., Inc.*, 339 F.3d 1347, 1351 & n. * (Fed. Cir. 2003) ("[T]he district court could have dismissed the counterclaim without prejudice (either with or without a finding that the counterclaim was moot) following the grant of summary judgment of non-infringement."); *Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) ("We have previously held that a district court has discretion to dismiss a counterclaim alleging that a patent is invalid as moot where it finds no infringement."); *see also*

13

**A19**

*Aqua Marine Supply v. AIM Machining, Inc.*, 247 F.3d 1216, 1220 (Fed. Cir. 2001) ("[W]here, as here, the alleged infringer has settled the infringement issue, and no longer professes any interest in defending its declaratory judgment of invalidity, the case has become moot as a result of the voluntary act of the patentee.").

In this case, the exercise of such discretion is warranted. The non-infringement judgment clearly resolves this case and there is no ongoing controversy under the invalidity claim warranting this Court's continued consideration. Mouldtec's objective in pursuing this litigation was to protect its accused products against the looming threat levied by Pagter and the '330 patent. That end has been achieved. The claim seeking a declaration of invalidity is dismissed without prejudice. *See, e.g., AstraZeneca LP v. Breath Ltd.*, Civ. No. 08-1512, 2013 WL 2404167, at *7 (D.N.J. May 31, 2013) (dismissing invalidity claim after finding non-infringement), aff'd 542 F. App'x 971; *Wells–Gardner Elec. Corp. v. C. Ceronix, Inc.*, Civ. No. 10–2536, 2011 WL 1467182, *3 (N.D. Ill. Apr. 14, 2011).

### C. Exceptional Cases Under § 285

Mouldtec and Pagter filed claims for attorney fees under Section 285. Though they have yet to seek judgment on these claims, the Court takes this opportunity to admonish the parties to comply with Local Rule 54.3 before seeking Court intervention on this point. This Court "may award reasonable attorney fees to the prevailing party" in "exceptional" patent infringement cases. 35 U.S.C. § 285. Local Rule 54.3 provides, however, an additional procedure for filing a motion for attorney fees in the Northern District of Illinois. Among other things, Local Rule 54.3 requires the parties to "confer and attempt in good faith to agree on the amount of fees or related nontaxable expenses that should be awarded prior to filing a fee motion." L.R. 54.3(d). While "attempt[ing] to agree," the parties are required to exchange certain information. L.R. 54.3(d).

Specifically, the movant—the party intending to file the fee motion—must provide the respondent with all time and work records and specify the hours for which compensation will be sought, the hourly rates claimed, and evidence supporting any related nontaxable expenses. *See* L.R. 54.3(d)(1)-(3). If no agreement can be reached after the movant provides this information, the respondent is required to disclose its total amount of attorney fees paid and must provide additional information relating to any matters that remain in dispute. *See* L.R. 54.3(d)(5).

## CONCLUSION

For the reasons stated, this Court grants Mouldtec's motion for summary judgment of non-infringement [126]. Its motion for summary judgment of invalidity [122] is dismissed as moot.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 9/29/2015

15

**A21**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Mouldtec, Inc.,

Plaintiff(s),

v.

Pagter & Partners International B.V., and Pagter
Innovations, Inc.,

Defendant(s).

Case No.  12 c 4249
Judge Virginia M. Kendall

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $          ,

which  ☐ includes          pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

☐    in favor of defendant(s)
and against plaintiff(s)

.

Defendant(s) shall recover costs from plaintiff(s).

☒    other: For the reasons stated, this Court grants Mouldtec's motion for summary judgment of non-infringement [126]. Its motion for summary judgment of invalidity [122] is dismissed as moot.   Civil case terminated.

This action was *(check one)*:

☐ tried by a jury with Judge        presiding, and the jury has rendered a verdict.
☐ tried by Judge        without a jury and the above decision was reached.
☒ decided by Judge Virginia M. Kendall on a motion for summary judgment.

Date:   9/29/2015                    Thomas G. Bruton, Clerk of Court

**A22**

Tresa S. Abraham , Deputy Clerk



US006581330B1

(12) **United States Patent**       (10) **Patent No.:**    **US 6,581,330 B1**
Helsloot et al.                     (45) **Date of Patent:**    *Jun. 24, 2003

(54) **PACKAGING FOR CUT FLOWERS**

(75) Inventors: **Joannes Carolus Antonius Helsloot,** 'S-Hertogenbosch (NL); **Janus Adriaan Willem De Pagter,** Dinteloord (NL)

(73) Assignee: **Pagter & Partners International B.V.,** Dinteloord (NL)

( * ) Notice: This patent issued on a continued prosecution application filed under 37 CFR 1.53(d), and is subject to the twenty year patent term provisions of 35 U.S.C. 154(a)(2).

Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/674,810**

(22) PCT Filed: **May 6, 1999**

(86) PCT No.: **PCT/NL99/00273**

§ 371 (c)(1),
(2), (4) Date: **Dec. 14, 2000**

(87) PCT Pub. No.: **WO99/57040**

PCT Pub. Date: **Nov. 11, 1999**

(30) **Foreign Application Priority Data**

May 7, 1998   (NL) ............................................. 1009100

(51) **Int. Cl.**[7] ............................. **B65D 85/52;** A01G 9/02

(52) **U.S. Cl.** ............................. **47/84;** 47/65; 47/41.01; 206/423

(58) **Field of Search** ........... 47/84, 41.01, 41.11–41.14, 47/65.5, 29.6, 66.1, 86; 206/423; 493/102; 220/4.03, 913; 229/100; D3/201; 150/154; 222/531; D9/414; B65D 85/56

(56) **References Cited**

U.S. PATENT DOCUMENTS

3,314,194 A  *  4/1967  Halleck

| | | | | |
|---|---|---|---|---|
| 3,973,356 A | * | 8/1976 | Schacht | 47/41 R |
| 4,291,493 A | * | 9/1981 | Monson | 47/14 |
| 4,316,540 A | * | 2/1982 | Lapham | 206/507 |
| 4,784,112 A | * | 11/1988 | Hayashi | 126/262 |
| 5,060,799 A | * | 10/1991 | De Pagter | 206/423 |
| 5,901,904 A | * | 5/1999 | Avot | 229/109 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| CA | 2080254 | 4/1994 | |
| EP | 0311174 | 4/1989 | |
| EP | 0311174 | 3/1991 | |
| EP | B1 0536613 | 9/1992 | |
| EP | 0536613 | 4/1993 | |
| FR | 2616414 | * 6/1987 | .......... B65D/43/06 |
| FR | 2612888 | 9/1988 | |
| JP | 06-181833 | * 7/1994 | .......... A47G/7/06 |
| NL | 9101847 | * 1/1993 | .......... B65D/21/04 |
| NL | 9101847 | 6/1993 | |

OTHER PUBLICATIONS

International Search Report PCT/NL99/00273 Jul. 20, 1999.

* cited by examiner

*Primary Examiner*—Peter M. Poon
*Assistant Examiner*—Andrea M. Valenti
(74) *Attorney, Agent, or Firm*—Handal & Morofsky

(57)          **ABSTRACT**

Packaging for cut flowers comprises: a rectangular crate (**1**) with sloping side walls which are provided close to their top walls with a channel (**5, 6, 7**) that projects outwards and is open at the top, the base of which channel serves to support a foldable rectangular protective tube (**2**). In order to be able to nest a number of crates (**1**) deeply into one another without risk of binding, a shoulder (**9**) is arranged between the top edge of the sloping side walls of the crate and the base (**7**) or the bottom end of the inner flange (**6**) of the channel (**5, 6, 7**) open at the top. Said shoulder can also serve as support for a rectangular presentation collar.

**14 Claims, 9 Drawing Sheets**



fig -1



Case: 16-1131    Document: 13    Page: 65    Filed: 12/28/2015



Fig - 3





fig - 4

Fig - 5





Fig-6

Fig-7



Fig-8



Fig-9



Fig-10



US 6,581,330 B1

1

# PACKAGING FOR CUT FLOWERS

The invention relates to a packaging for cut flowers comprising: a rectangular crate with sloping side walls which are provided close to their top walls with a channel that projects outwards and is open at the top, the base of which channel serves to support a foldable rectangular protective tube.

Packaging of this type is known in practice and is essentially described in EP-B 0 311 174.

The purpose of the rectangular tube is to protect those parts of cut flowers placed in the crate which extend above the crate during transport and during presentation at auction or when put up for sale at wholesale markets. A plastic cover is placed on the tube, which cover can be removed in order to assess the quality of the flowers. After the packaging, including tube and cover, has been transported, following auctioning or sale, to a shop or any place in the world, the rectangular tube is removed, the cut flowers fanning out in the crate and not having to be transferred to a bucket.

If the empty crates are nested deeply into one another in order, for example, to be returned to the sender, the inner flange of the channel of a lower crate, which channel is open at the top, could bind on the outer surface of the sloping crate walls of a higher crate, with the result that separating a stack of crates nested in one another presents problems. The aim is so to improve the packaging mentioned in the preamble that the crates can be nested deeply into one another without the risk of binding.

To this end the packaging mentioned in the preamble is characterised in that a shoulder extends between the top edge of the sloping side walls of the crate and the base or the bottom end of the inner flange of the said channel open at the top.

The said shoulder can serve as a support for a rectangular presentation collar. This is important in particular in the case of somewhat longer cut flowers (for example roses with a stem length of 1 meter). After removing the said protective tube the flowers can fan out far beyond the top edge of the crate. The rectangular presentation collar counteract this.

Said presentation collar is shorter than the protective tube, so that the top part of the flower stems with flowers extends well above the top edge of the presentation collar. The presentation collar preferably consists of a foldable tube made of plastic and said collar can be provided with openings and printed with advertising.

Preferably, ribs are arranged on the said shoulder to reinforce the inner flange of the channel open at the top. In this case cut-outs or recesses are arranged in the bottom edge of the presentation collar to allow passage of said ribs.

After having been removed at an angle from the top of the crate, the foldable rectangular protective tube can be utilized to support the crate. To this end he under surface of the base of the channel open at the top can form the base surface of a channel open at the bottom, which is intended to form a seating channel for the top edge of the protective tube if the crate is inserted from above into a rectangular protective tube. The protective tube can have printing with advertising copy or the like.

Usually the crate is provided with hand grip openings in two side faces located opposite one another. In order to anchor the presentation collar, a strip projecting outwards can have been fixed to the bottom edge of each of two opposing walls of said collar, which strip extends through a hand grip opening and engages on the top edge thereof

The packaging also comprises a cover that fits on the protective tube. On its top surface the cover is provided with

2

ribs, on which a crate stacked on top can bear in such a way that a ventilation gap is produced between the top surface of the cover and the bottom surface of a crate stacked on top. Said ventilation gap is beneficial for the quality of the packed flowers.

Positioning ridges for lateral positioning of a crate stacked on the cover are preferably arranged on the top surface of the cover, which ridges project above the ribs and are nestable in the case of covers stacked on top of one another. As a result of the nestable ridges, covers stacked on top of one another take up little height when being returned to the sender.

FIG. 1 shows a perspective view of a complete flower packaging according to the invention in the transport position.

FIG. 2 shows a perspective view of a complete flower packaging according to the invention in the presentation position for long cut flowers.

FIG. 3 shows a cross-section through a side wall section of two crates nested in one another.

FIG. 4 shows a cross-section at the location of a hand grip opening through part of the side wall of a crate, the protective tube, the cover and the presentation collar in the transport position according to FIG. 1.

FIG. 5 shows a cross-section through part of the side wall of a crate, the protective tube and the presentation collar in the presentation position according to FIG. 2.

FIG. 6 shows a view of a crate that is bearing on the cover of a crate beneath it.

FIG. 7 shows a plan view of the crate.

FIG. 8 shows a bottom view of the crate.

FIG. 9 shows a cross-section of part of a number of covers stacked on one another.

FIG. 10 shows a cross-section of part of a number of covers stacked on one another , according to an alternative embodiment.

The packaging shown for cut flowers comprises a rectangular crate 1 that is usually made of plastic, a rectangular protective tube 2 that is usually made of cardboard or thin plastic and has been folded from a blank, a cover 3 that is usually made of plastic, and a tubular presentation collar 4. The latter can be a useful addition in the case of long flowers but is not necessary. The collar 4 will not be used with short flowers.

At its top edge the crate 1 has a channel which projects outwards and has an outer flange 5, an inner flange 6 and a base 7. The channel 5, 6, 7 is open at the top. The crate has sloping side walls such that it is nestable in a similar crate. There are two relatively long side walls located opposite one another and two short side walls located opposite one another. A hand grip opening 8 has been made in each of the short side walls immediately below the channel 5, 6, 7. The crate can also be square.

In the transport position (see FIGS. 1 and 4) the rectangular protective tube 2 bears on the base 7 of the channel 5, 6, 7 of the crate 1 and the L-shaped peripheral edge of the cover 3 is placed on said tube.

A shoulder 9 is arranged on the inside of the channel 5, 6, 7 open at the top, approximately at the height of the base 7 thereof, which shoulder 9, as can be seen from the plan view in FIG. 7, is broadest at the corners of the crate and gradually narrows towards the middle of the side walls of the crate. It is not precluded that the width of the shoulder remains constant As can be seen from FIG. 3, as a consequence of the presence of shoulder 9, the top end of the inner flange 6 of the channel 5, 6, 7, open at the top, of a lower crate will not come into binding contact with the outer

US 6,581,330 B1

3

surface of a side wall of the higher crate when the crates are nested deeply into one another.

The shoulder 9 is provided with ribs 10a, which reinforce the inner flange 6 of the channel open at the top. The shoulder can also serve to support a tubular presentation collar 4 which, for example, is made of a lightweight plastic or an interior to hold individual flowers in place. Said collar 4 serves to prevent the stems of long cut flowers from fanning out too far after removal of the protective tube 2, as a result of which the presentation of the flowers at the point of sale is improved. Cut-outs 10b, intended to allow the passage of the ribs 10a, have been made in the bottom edge of the collar 4. In order to position the collar 4 firmly on the shoulder 9, use is made of two L-shaped elements 11 fixed to the short sides of the collar 4, the horizontal flange of said elements being inserted through a hand grip opening 8 such that the top surface of said horizontal flange engages on the bottom surface of the base 7 of the channel 5, 6, 7.

Openings 13 have been made in the base of the channel 5, 6, 7. A channel open at the bottom is arranged on the underside of the base 7 of the channel 5, 6, 7 open at the top, which channel open at the bottom is formed by an outer flange 14, the wall of a crate 1 and the bottom surface of the base 7 of the channel 5, 6, 7. Reinforcing ribs 15 are arranged on said bottom surface, the height of which ribs is appreciably less than that of the outer flange 14. As FIGS. 2 and 5 show, the protective tube 2 is placed on the ground, the top edge of the protective tube 2 extends into the channel 14, 7, 1 open at the bottom and engages on the shallow ribs 15. This position promotes the presentation in the shop, in particular if the protective tube is provided with printing. The outer flange 14 can consist of a number of ridges positioned some distance apart.

Four pairs of positioning ridges 16 are positioned on the top surface of the cover. Said ridges protrude above a number of ribs 17. The ridges serve to stop a crate of a subsequent pack stood on the cover of a pack from shifting from the cover. The ridges 16 are nestable when a number of covers are stacked (see FIG. 9). The stack of covers is thus not unnecessarily high. It can be seen from FIG. 6 that the ribs 17 positioned on the top surface of the covers serve as support for a crate stacked thereon, there being a relatively high ventilation gap between the crate and a grid pattern 18 of curved strips.

Small quadrant-shaped ridges 19 are arranged at the four corners of the cover to prevent covers stacked on one another from turning relative to one another. Furthermore, reinforcing strips can have been arranged along the side edges of the cover.

The embodiment according to FIG. 10 differs from that according to FIG. 9 in that the ribs 17 have acquired a sloping position, as a result of which they are able to nest. The nest height of the covers remains the same, whilst the ribs can be higher and the covers acquire approximately twice the rigidity. Keeping the nest height constant is important for keeping the transport costs low.

Depending on the height of the loading space in a lorry and on the height of the protective tube, it is possible to stack more than two packagings on top of one another.

What is claimed is:

1. Packaging for cut flowers comprising:

(a) a rectangular crate defining an interior volume, the rectangular crate having sloping side walls;

(b) an upwardly facing channel having a base portion disposed close to the top portion of the sloping walls, the base portion being defined by an inner flange and an outer flange and projecting outwardly of the interior

4

volume, wherein the base of the channel is capable of supporting a foldable rectangular protective tube; and

(c) a shoulder projecting into the interior volume and extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel, wherein the shoulder is capable of supporting a rectangular presentation collar or an interior for holding individual flowers in place, wherein the shoulder is further comprises ribs capable of reinforcing the inner flange of the channel and wherein the presentation collar has cutouts on its bottom edge to accommodate the ribs.

2. Packaging for cut flowers comprising:

(a) a rectangular crate defining an interior volume, the rectangular crate having sloping side walls;

(b) an upwardly facing channel having a base portion disposed close to the top portion of the sloping walls, the base portion being defined by an inner flange and an outer flange and projecting outwardly of the interior volume, wherein the base of the channel is capable of supporting a foldable rectangular protective tube, the base of the channel having an upper surface and a lower surface, the lower surface of the base forms a top portion of a downward facing channel defined by an outer surface of the crate and a projection of the outer flange below the base, the downward facing channel being capable of accommodating a top edge of the protective tube and ribs of relatively low height are disposed on the top portion of the downward-facing channel; and

(c) a shoulder projecting into the interior volume and extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel.

3. Packaging for cut flowers comprising:

(a) a rectangular crate defining an interior volume, the rectangular crate having sloping side walls;

(b) an upwardly facing channel having a base portion disposed close to the top portion of the sloping walls, the base portion being defined by an inner flange and an outer flange and projecting outwardly of the interior volume, wherein the base of the channel is capable of supporting a foldable rectangular protective tube;

(c) a shoulder projecting into the interior volume and extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel; and

(d) a cover fitted on the rectangular crate to bear a crate stacked on top of the cover, the cover having a top surface provided with ribs, the top surface having a topographic grid pattern to provide a ventilation gap between the cover and the crate above.

4. Packaging as claimed in claim 3, wherein the top surface of the cover further comprises lateral positioning ridges, the ridges project above ribs and are capable of being nested when covers are stacked one on top of another.

5. Packaging for cut flowers comprising:

(a) a rectangular crate defining an interior volume, the rectangular crate having sloping side walls and at least two hand grip openings disposed on opposing ones of said side walls;

(b) an upwardly facing channel having a base portion disposed close to the top portion of the sloping walls, the base portion being defined by an inner flange and an outer flange and projecting outwardly of the interior

US 6,581,330 B1

5

volume, wherein the base of the channel is capable of supporting a foldable rectangular protective tube; and

(c) a shoulder projecting into the interior volume and extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel

(d) a rectangular presentation collar capable of being supported on the shoulder;

(e) two L-shaped flange elements attached to opposing sides of the collar, each L-shaped element having a flange inserted through a respective one of the hand grip openings of the crate such that a top surface of the inserted flange engages the base portion of the channel.

**6**. Packaging as claimed in claim **5**, further comprising ribs on the shoulder capable of reinforcing the inner flange of the channel wherein the presentation collar has cutouts on its bottom edge to accommodate the ribs.

**7**. Packaging as claimed in claim **5**, wherein the base of the channel has an upper surface and a lower surface, the lower surface of the base forms a top portion of a downward facing channel defined by an outer surface of the crate and a projection of the outer flange below the base, the downward facing channel being capable of accommodating a top edge of the protective tube.

**8**. Packaging as claimed in claim **7**, further comprising ribs of relatively low height disposed on the top portion of the downward-facing channel.

**9**. Packaging as claimed in claim **5**, further comprising a cover fitted on the rectangular crate to bear a crate stacked on top of the cover, the cover having a top surface provided with ribs, the top surface having a topographic grid pattern to provide a ventilation gap between the cover and the crate above.

**10**. Packaging as claimed in claim **9**, wherein the top surface of the cover further comprises lateral positioning ridges, the ridges project above ribs and are, capable of being nested when covers are stacked one on top of another.

**11**. Packaging for cut flowers comprising:

(a) a rectangular crate defining an interior volume, the rectangular crate having sloping side walls;

6

(b) an upwardly open channel having a base portion disposed close to a top portion of the sloping walls, the base portion being defined by an inner flange and an outer flange, and projecting outwardly of the interior volume, wherein the base of the channel is capable of supporting a foldable rectangular protective tube;

(c) a shoulder projecting into the interior volume and extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel; and

(d) ribs on the shoulder reinforcing the inner flange of the channel; wherein the presentation collar has cutouts on its bottom edge to accommodate the ribs.

**12**. Packaging as claimed in claim **11**, wherein the shoulder is capable of supporting a rectangular presentation collar or an interior for holding individual flowers in place.

**13**. Packaging as claimed in claim **11**, comprising a rectangular presentation collar capable of being supported on the shoulder.

**14**. Package for cut flowers comprising:

a) a rectangular crate defining an interior volume and having sloping side walls;

b) an upwardly facing channel having a base portion disposed close to the top portion of the sloping walls, the base portion extending between an inner flange and an outer flange and projecting outwardly of the interior volume, wherein the base of the channel is capable of supporting a foldable rectangular protective tube;

c) ribs disposed beneath the upwardly facing channel and supporting the base portion of the channel to bear the weight of the foldable rectangular protective tube and of another similar packaged stacked on top of said package; and

d) a shoulder projecting into the interior volume and extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel to prevent one crate from binding to another, similar crate when nested.

* * * * *

# United States Court of Appeals
# for the Federal Circuit

*Mouldtec v. Pagter & Partners International US*, No. 2016-1131

## CERTIFICATE OF SERVICE

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by MCANDREWS, HELD & MALLOY, LTD, attorneys for Defendants-Appellants, to print this document.  I am an employee of Counsel Press.

On **December 28, 2015** counsel has authorized me to electronically file the foregoing **Brief for Defendants-Appellants**, with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

MATTHEW PAUL BECKER, ESQ.
JON O. NELSON, ESQ.
BANNER & WITCOFF, LTD.
Ten South Wacker Drive, Suite 3000
Chicago, IL 60606
mbecker@bannerwitcoff.com
jnelson@bannerwitcoff.com
(312) 463-5000
*Counsel for Defendant-Appellee*

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

December 28, 2015                                     /s/ Elissa Matias
                                                                   Counsel Press

33

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).   The brief contains 6,291 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).  The brief has been prepared in a proportionally-spaced typeface using Microsoft® Word 2010 in Times New Roman 14-point format.

/s/ Patrick J. Arnold Jr.
Attorney for Defendants-Appellants

December 28, 2015

34