No. 2016-1131

# In the
# United States Court of Appeals
# for the Federal Circuit

MOULDTEC, INC.,

*Plaintiff-Appellee,*

v.

PAGTER & PARTNERS INTERNATIONAL B.V.,
PAGTER INNOVATIONS, INC.,

*Defendants-Appellants.*

―――――――――――――――――

Appeal from the United District Court
for the Northern District of Illinois, Case No. 1:12-cv-04249.
The Honorable **Virginia M. Kendall**, Judge Presiding

## BRIEF OF PLAINTIFF-APPELLEE MOULDTEC, INC.

MATTHEW P. BECKER
JON O. NELSON
BANNER & WITCOFF, LTD.
Ten South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

*Counsel for Mouldtec, Inc.*

February 11, 2016

## APPELLEE'S CERTIFICATE OF INTEREST

The undersigned counsel of record for Appellee hereby certifies the following in compliance with Fed. Cir. R. 47.4:

1.    The full name of every party represented by me is:

    Mouldtec, Inc.

2.    The name of the real party in interest represented by me is:

    None.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    None.

4.    The names of all law firms and the partners or associates who appeared for Mouldtec, Inc. in proceedings before the United States District Court for the Northern District of Illinois, or are expected to appear in this Court, are:

BANNER & WITCOFF LTD

Matthew P. Becker, Jon O. Nelson

BISHOP DIEHL & LEE LTD

Edward F. Bishop, Nicolas S. Lee, Monique A. Morneault

COWLIN, NAUGHTON, CURRAN & COPPEDGE

Justin Hansen

# TABLE OF CONTENTS

APPELLEE'S CERTIFICATE OF INTEREST .................................................... ii

TABLE OF CONTENTS .................................................................................. iii

TABLE OF AUTHORITIES ..............................................................................v

STATEMENT OF RELATED CASES ................................................................1

STATEMENT OF THE ISSUES ........................................................................1

STATEMENT OF THE CASE AND FACTS RELEVANT TO THE ISSUES ......2

    1.    Procedural Posture of the Case........................................................2

    2.    The Invention of the Patent-in-Suit Is a Nestable Rectangular Crate Having a Shoulder that Improved the Ability of Crates to Nest Without Binding ........................................................................3

    3.    The Prosecution History of the Patent-in-Suit Confirms that Nesting is a Critical Feature of the Invention .....................................8

    4.    Mouldtec's Accused Products Do Not Have a Shoulder in the Location Required by Claim 2 .......................................................10

    5.    The District Court's Claim Construction..........................................13

    6.    The District Court Properly Granted Summary Judgment Because Claim 2 Recites a Different Arrangement of Structural Elements Than is Found in the Accused Products ..........................................14

    7.    Issues on Appeal ...........................................................................17

SUMMARY OF THE ARGUMENT ..................................................................18

ARGUMENT....................................................................................................19

    1.    The District Court Correctly Construed "Rectangular Crate Having Sloping Side Walls" To Mean the Rectangular Crate Has Four Sloping Side Walls to Allow the Crates to Nest.......................19

A.    The '330 Patent Specification Makes Clear that the Invention Is a Nestable Crate ................................................20

B.    The Prosecution History Confirms that the Applicants Considered their Invention to be a Rectangular Crate Having a "Shoulder" That Allowed the Crate to Nest Without Binding ......................................................21

C.    Appellants Proposed Claim Construction Improperly Ignores The '330 Patent Specification and Prosecution History and Attempts to Construe "Walls" in a Vacuum ........23

D.    The Prior Art Appellants' Cite Is Extrinsic Evidence and Is Not Probative of the Meaning of the "Rectangular Crate Having Sloping Side Walls" ................................................25

E.    Claim Differentiation Does Not Apply Because Claims 2 and 14 Differ in Scope Due To Structural Elements Unrelated to a Nesting Capability ..........................................27

2.    The District Court Did Not Err In Construing the "Shoulder" Limitation ........................................................30

3.    The District Court Did Not Adopt a Different Construction for the "Shoulder" Limitation When Granting Summary Judgment of Noninfringement.............................................................32

4.    Pagter Was Not Deprived of Procedural Fairness Because the District Court Did Not Adopt a New Claim Construction in Granting Summary Judgment..........................................35

CONCLUSION ......................................................................38

CERTIFICATE OF SERVICE....................................................39

CERTIFICATE OF COMPLIANCE..............................................40

# TABLE OF AUTHORITIES

## Cases

*Andersen Corp. v. Fiber Composites, LLC*,
  474 F.3d 1361 (Fed. Cir. 2007)........................................................30

*Chicago Truck Drivers v. El Paso CGP Co.*,
  525 F.3d 591 (7th Cir. 2008) ....................................................36, 37

*DeMarini Sports, Inc. v. Worth*,
  239 F.3d 1314 (Fed. Cir. 2001)......................................................24

*Finnigan Corp. v. International Trade Com'n*,
  180 F.3d 1354 (Fed. Cir. 1999)......................................................35

*Jones v. Union Pacific R. Co.*,
  302 F.3d 735 (7th Cir. 2002) .........................................................36

*Kraft Foods, Inc. v. Int'l Trading Co.*,
  203 F.3d 1362 (Fed. Cir. 2000)..................................................28, 30

*Mantech Envtl. Corp. v. Hudson Envtl. Servs.*,
  152 F.3d 1368 (Fed. Cir. 1998)......................................................28

*Medrad, Inc. v. MRI Devices Corp.*,
  401 F.3d 1313 (Fed. Cir. 2005)......................................................24

*Mouldtec Inc. v. Pagter & Partners, Int'l B.V.*
  12 C 4249, 2014 WL 4262633 (N.D. Ill. June 4, 2014) ....................16

*Mouldtec, Inc. v. Pagter & Partners, Int'l B.V.*,
  12 C 4249, 2014 U.S. Dist. LEXIS 123300 (N.D. Ill. June 4, 2014) .............2, 13

*NTP, Inc. v. Research in Motion, Ltd.*,
  418 F.3d 1282 (Fed. Cir. 2005)......................................................34

*O2 Micro Int'l v. Beyond Innovation Tech.*,
  521 F.3d 1351 (Fed. Cir. 2008)......................................................31

*Ormco Corp. v. Align Tech., Inc.*,
  498 F.3d 1307 (Fed. Cir. 2007)........................................20, 22, 23

*Perkin-Elmer Corp. v. Computervision Corp.*,
    732 F.2d 888 (Fed. Cir. 1984) ...........................................................................33

*Renishaw PLC v. Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998).........................................................................20

*Seachange Int'l, Inc. v. C-COR, Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005).........................................................27, 28, 30

*Southwall Techs., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) .........................................................................22

*Stratoflex, Inc. v. Aeroquip Corp.*,
    713 F.2d 1530 (Fed. Cir. 1983).......................................................................33

*Textile Banking Co., Inc. v. Rentschler*,
    657 F.2d 844 (7th Cir. 1981) ....................................................................35, 36

*United States v. Adams*,
    383 U.S. 39, 86 S. Ct. 708, 15 L.Ed.2d 572 (1966)..........................................24

*Vitronics Corp. v. Conceptronics, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ...................................................................25, 26

**Rules**

Fed. Cir. R. 28(b) ..................................................................................................... 2

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil action was previously before this or any other appellate court. Counsel for Plaintiff-Appellee Mouldtec, Inc. ("Mouldtec") is not aware of any cases pending in this or any other court that will directly affect or be affected by this Court's decision in the pending appeal.

## STATEMENT OF THE ISSUES

1.    Whether, in view of the specification and prosecution history, the district court correctly construed the "rectangular crate having sloping side walls" to require four side walls of the rectangular crate to slope?

2.    Whether the district court correctly construed the "shoulder" limitation[1] according to its ordinary meaning as some a lateral protrusion limitation and requiring a "shoulder" on four sloping side walls?

3.    Whether the district court applied its construction of the "shoulder" limitation from its Claim Construction Order when granting summary judgment of no infringement where the district court's summary judgment opinion cited its Claim Construction Order and the definition it determined for the "shoulder" limitation?

---

[1] The "shoulder limitation reads in its entirety: "a shoulder projecting into the interior volume and extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel." A54, 4:32-35.

**STATEMENT OF THE CASE AND FACTS RELEVANT TO THE ISSUES**

Mouldtec disagrees with Defendant-Appellants' Pagter & Partners International B.V. and Pagter Innovations, Inc. (collectively "Pagter") Statement of the Case and Statement of the Facts as incomplete and inaccurate, and therefore supplements it under Rule 28(b), Fed. Cir. R.

### 1.    Procedural Posture of the Case

On May 31, 2012, Mouldtec filed this action against Pagter in the United States District Court for the Northern District of Illinois seeking a declaratory judgment of noninfringement and invalidity of United States Patent No. 6,581,330 (the "'330 patent"). *See* A7, A29, at Dkt. #1. The '330 patent is entitled "Packaging for Cut Flowers" and relates to a rectangular crate having sloping side walls and a specific arrangement of additional structural elements. A44.

Pagter filed counterclaims alleging that Mouldtec infringed the '330 patent, and during discovery contended that Mouldtec (i) directly infringed claims 2 and 4 of the '330 patent and (ii) contributed to and induced infringement of claim 4. *See* A33, at Dkt. #46, A510.

The parties disputed the meaning of certain claim terms which the district court resolved in its Claim Construction Order. A1-6; *Mouldtec, Inc. v. Pagter & Partners, Int'l B.V.,* 12 C 4249, 2014 U.S. Dist. LEXIS 123300 (N.D. Ill. June 4, 2014).

2

Mouldtec subsequently moved for summary judgment of noninfringement of asserted claims 2 and 4 of the '330 patent, A452-55, which the Court granted.[2] A7-21.

Finally, the district court declined to exercise jurisdiction over Mouldtec's declaratory judgment claim of invalidity and dismissed it without prejudice as moot.  A19-20.

**2.    The Invention of the Patent-in-Suit Is a Nestable Rectangular Crate Having a Shoulder that Improved the Ability of Crates to Nest Without Binding**

The '330 patent generally relates to packaging for transporting, storing, and displaying cut flowers.  *See* A54, 1:11-20.  Figure 1 of the '330 patent depicts the primary components of a flower packaging system, including a rectangular crate 1, a rectangular protective tube 2, and a cover 3.

---

[2] During summary judgment briefing, Pagter conceded that Mouldtec did not infringe claim 4, A1001, at n. 2, and the district court entered judgment with respect to claim 2.  A7, at n. 1.  Pagter does not appeal the grant of summary judgment with respect to claim 4.  *See* Appellant Br. at 10 ("Claim 2 of the '330 patent is the only claim at issue on appeal …").

3



| A45, '330 Patent, Figure 1 | A45, '330 Patent, Figure 2 |
|:---:|:---:|

The protective tube 2 fits into a channel on the top of the crate and the cover 3 may be fitted on the top of the protective tube.   A54, 2:45-57.   Figure 1 shows the packaging positioned to transport flowers.   A54, 2:13-15, 54-57.   Figure 2 shows the packaging positioned to display flowers.  A55, 3:26-31.

The '330 patent describes the invention as packaging for cut flowers that includes "a rectangular crate with sloping side walls" and a channel provided close to the top of the side walls that is capable of holding the protective tube.  A54, 1:3-8.  The rectangular "crate has sloping side walls such that it is nestable in a similar crate."  A54, 2:47-48.

4

The '330 patent acknowledges that "packaging of this type" was "known in practice" and described in European Patent Application, EP B 0 311 174.[3]   A54, 1:9-10.   The "known," prior art rectangular crate with sloping side walls (1), a rectangular protective tube (2) and a cover (3) is depicted in Figure 1 of the European Patent Application:



A1240, A1243.   The prior art European Patent Application describes the rectangular crate as having four sloping side walls so that the crate can nest: "The crate has a rectangular cross-section and the cross-section surface area decreases slightly from top to bottom, so that nesting of crates is possible."   A1241, 2:17-20.

---

[3] One of the appellants, Pagter & Partners International B.V., is the applicant for EP 0 311 174.  *See* A1240.

The applicants for the '330 patent identified a problem with the prior art flower packaging. Namely, a stack of crates nested in one another could bind and cause difficulties separating nested crates from one another. A54, 1:21-26. The applicants for the '330 patent sought "to improve the [prior art] packaging" so that crates could "be deeply nested in one another without the risk of binding." *Id.*, 1:26-29. The applicants purported to solve the binding problem by adding a "shoulder" to the top of the rectangular crate's four sloping side walls in a particular location: a shoulder that "extends between the sloping side walls of the crate and the channel base or the bottom end of the inner flange" of the upwardly facing channel that holds the protective tube. *Id.*, 1:30-34.

The combination of the rectangular crate having four sloping side walls and a shoulder structure allows the crates to be deeply nestable without binding. A54, 2:47-48 ("The crate has sloping side walls such that it is nestable in a similar crate."); A54-5, 2:64-3:2 ("As can be seen in FIG. 3, as a consequence of the presence of a shoulder 9, the top end of the inner flange 6 of channel 5, 6, 7, open at the top, of a lower crate will not come into binding contact with the outer surface of a side wall of the higher crate when the crates are nested deeply into one another.")

6

The location of the shoulder relative to the top of the sloping side walls of the rectangular crate is best depicted in Figure 3 of the patent, which is a cross-section through a side wall of two crates nested in one another.



A54, 2:19-20. Figure 3 has been annotated to identify the pertinent structural elements recited in the disputed "shoulder" limitation of claim 2. *See* A47. The shoulder (9) connects the top of sloping side wall and the channel base (7) and bottom of the inner flange (6). A54, 2:45-48, 58-63. The arrangement of structural elements depicted in Figure 3 corresponds directly to the limitations recited in claim 2, element (c):

2. Packaging for cut flowers comprising:

(a) a rectangular crate defining an interior volume, the rectangular crate having sloping side walls;

(b) an upwardly facing channel having a base portion disposed close to the top portion of the sloping walls, the base portion being defined by an inner flange and an outer flange and projecting outwardly of the interior volume, …; and

7

(c) a ***shoulder*** projecting into the interior volume and ***extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel***.

A55, 4:13-35 (emphasis added).

### 3.    The Prosecution History of the Patent-in-Suit Confirms that Nesting is a Critical Feature of the Invention

Amendments and arguments made during prosecution to claim 2 reinforce that nesting is an essential feature of the invention. Claim 2 was first submitted in a March 26, 2002 Amendment[4] as application claim 13. *See* A862-876, at A864-65. Application claim 13 depended from application claim 12, which in turn depended from application claim 9. A864-65. Accompanying the submission of new application claim 9, the applicants made arguments regarding the invention in an effort to distinguish the new claims over prior art patents which the Examiner had used to reject previously submitted application claims 1-8. A869-75.

First, the applicants argued that application claim 9 recited a "shoulder" structure that differentiated the claims from two prior art patents. A870-71.

Next, the applicants unambiguously explained that the crates of the invention nest. A870 ("when crates are nested, the configuration of the shoulder may prevent the top end of the inner flange of the channel from coming into

---

[4] The Amendment cancelled then pending Application Claims 1-8, which the Examiner had rejected in an earlier Office Action in view of prior art patents. *See* A864, A869.

binding contact with the outer surface of a side wall of a higher crate."). A870. The applicants argued application claims 10-15 were allowable "with claim 9 for the reasons that claim 9 is allowable." A873.

In a May 8, 2002, the Examiner rejected application claims 9, 10 and 12 as anticipated by prior art, A882-83, and objected to application claim 13 "as being dependent upon a rejected base claim." A884. The Examiner indicated that application claim 13 "would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims." *Id.*

On August 8, 2002, the applicants submitted an Amendment that followed the Examiner's recommendation and rewrote dependent claims in independent form. Specifically, the applicants amended application claim 13 to make it an independent claim having all the limitations of previously submitted application claims 9 and 12. A890, A892.

The applicants also amended application claim 9 to "make explicit what was inherent in the claim when read in light of the remarks accompanying the amendment filed on March 26, 2002, namely that the projecting shoulder recited in clause (c) of claim 9 prevents one crate from binding to another, similar crate when nested." A893. The applicants went on to explain that the "projecting shoulder

(9)[5] provides dual functions of being able to support a presentation collar and preventing binding of nested crates." A894.

On January 22, 2003, the Examiner issued a Notice of Allowance allowing application claim 13, which issued as claim 2 in the '330 patent. A926; A937. Based on the applicants' statements regarding the invention, nesting is an essential and critical feature of the invention. Applicants' arguments during prosecution are also consistent with the expressed intent of their invention to improve the ability of known rectangular crates to nest without risk of binding. A54, 1:21-34.

### 4.    Mouldtec's Accused Products Do Not Have a Shoulder in the Location Required by Claim 2

Appellants accused Mouldtec's "Tazza" and "Secchio" flower buckets of infringing claim 2 of the '330 patent. A1018, at ¶3. The accused products have the same relevant structures and differ primarily in size. A1018, at ¶4. The accused buckets have two shorter sides with handles, and two longer sides with a series of vertical vent openings. *See* A586; A939; A964; A1046. As shown in the images below, both the vent side and handle side walls include a recessed portion:

---

[5] The numeral (9) refers to the number associated with the shoulder in the figures of the '330 patent.

10



| Top View of Accused Product (A586) | Side Views of Accused Product Showing Recessed Side Walls (A964) |
|---|---|

Pagter supported its infringement contentions with expert testimony that identified the structures in Mouldtec's accused products that allegedly corresponded to the structural elements of claim 2. *See generally* A574-748. Pagter's expert cut up an exemplary accused flower crate to show cross-sections of the crate. A689, ¶37. The figures below depict a cross-section through the vent side walls of Mouldtec's accused crates with annotations added by Pagter's expert. *See* A601; A984; A992, A994-95. As shown in the left hand figure, Pagter alleged an upward facing channel having a "base portion" is formed near the top of the crate by an inner flange and an outer flange. *See* A992, A590-91.



| Cross-Section of Accused Product Through Vent Side (A992) | Cross-section of Accused Product Through Vent Side (A601) |
|---|---|

According to Pagter's expert, the channel base, or "base portion," intersects the top of a non-recessed sloping wall of the crate and an inner flange emanates further therefrom.  A591.  The images in the table below depict the same cut up portion of a Mouldtec accused crate.  A591, A984, A994.  Pagter's expert during deposition added labels in red ink identifying (i) the top of the recessed portion of the vent side wall and (ii) the bottom of the inner flange .  A992; A984-87.  Pagter's expert in his report labeled the non-recessed portion of the side wall "side wall" in black typeface.  A574-748, at A591, A985-87.  The image on the right identifies the structure and location of the structure Pagter contends is the "shoulder" in the accused products on the vent side of the accused crates.  A601.  The "shoulder"

12

connects the recessed portion of the side wall to the non-recessed portion of the sidewall.  A964, at ¶73, *see* A992.  The "shoulder" is located below the channel base and below the inner flange of the bucket.  A959, *see* A992.

### 5.    The District Court's Claim Construction

The parties disputed the meaning of certain claim terms which the district court resolved in its Claim Construction Order.  A1-6; *Moultec, Inc. v. Pagter & Partners, Int'l B.V.,* 12 C 4249, 2014 U.S. Dist. LEXIS 123300 (N.D. Ill. June 4, 2014).

Of particular relevance to this appeal, the district court construed the "rectangular crate having sloping side walls" limitation to require that four side walls of the rectangular crate must slope.  A2.  As noted by the district court, the "parties dispute … the number of sloping side walls required by the claim term." A2.  The district court determined "that the crate has four sloping side walls" because the invention is related to a nestable crate and that nesting is an "essential feature" and "critical aspect of the invention."  A2-3.  The district court reasoned that: "All four [side] walls must slope to nest the crates.  Otherwise, the crates would stack one on top of another rather than fit into one another."  A3.

The parties also disputed the meaning of the "shoulder" limitation: "a shoulder projecting into the interior volume [of the rectangular crate] and extending between the top of the sloping walls of the crate and the channel base or

the bottom of the inner flange of the channel." *See* A5-6. Again, the parties' primary dispute related to the number of sloping walls required. *See* A5-6, A65-67, A295-98.

In its Claim Construction Order, the district court rejected both parties proposed claim constructions. More specifically, the district court rejected Pagter's proposed construction (which would require a shoulder extending between only two "sloping side walls") because the court already determined that the limitation "sloping walls" required four side walls of the rectangular crate to slope. A5. Mouldtec's proposed construction was rejected because it "merely re-characterize[d] existing claim language" as to the location of the "shoulder." *See* A5. The district court concluded that the plain and ordinary meaning of the term "shoulder" (some sort of lateral protrusion) controls and that the "claim language clarifies the [shoulder's] location." A5-6. Thus, claim 2, as construed by the district court, requires a rectangular crate having four sloping side walls, and a shoulder "extending between" the top of four sloping walls and another structure as recited in claim 2.

### 6. The District Court Properly Granted Summary Judgment Because Claim 2 Recites a Different Arrangement of Structural Elements Than is Found in the Accused Products

Following the close of discovery, Mouldtec moved for summary judgment of noninfringement of asserted claims 2 and 4 of the '330 patent, A452-55, which

the Court granted. A7-21. Mouldtec argued, *inter alia*, that the two vent sides[6] of its accused flower crates do not include a shoulder "extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flanges of the channel" as recited in claim 2. *See* A468-472. In its Claim Construction Order, the Court resolved that "sloping walls" in claim 2 means the rectangular crate has four sloping side walls. A2-3, A5. As a consequence of that construction, claim 2 requires a "shoulder" that must "extend between …" the top of four sloping side walls of the crate and another specific structural element. *See* A5 (rejecting Appellants' argument that the "'sloping walls' limitation only requires two sloping walls in[] the 'shoulder' limitation.").

The district court held that no reasonable juror could find that the vent sides of Mouldtec's accused flower crates contain a shoulder "extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flanges of the channel." A14-15. In doing so, the district court cited its Claim Construction Order and the construction given to the "shoulder" limitation: "The Court refused to construe the shoulder limitation, instead finding that the plain and ordinary meaning of shoulder as 'some sort of lateral protrusion' controlled and

---

[6] Mouldtec's accused flower crates have two longer sides having vents and two shorter sides having handles. Mouldtec premised its motion for summary judgment on the absence of a shoulder on the vent sides "extending between …" the structures recited in claim 2. *See* A1206, at n. 1.

that the claim language clarifie[d] the location of the shoulder." A14, *citing*

*Mouldtec Inc. v. Pagter & Partners, Int'l B.V.,* 12 C 4249, 2014 WL 4262633, at

*3 (N.D. Ill. June 4, 2014).

Next, the district court applied its construction and found the alleged

shoulder in Mouldtec's accused products did not satisfy the claim limitation

because the alleged shoulder "extend[s] between a recessed wall and non-recessed

wall; always below the channel" and because "there is a distinct gap between the

top of the accused shoulder and bottom of the channel." A15. Thus, the district

court concluded that "Because the accused products do not have a lateral

protrusion 'extending between the top of the sloping walls of the crate and the

channel base or the bottom of the inner flange of the channel, no reasonable jury

could find that they contain the shoulder limitation in claim 2 of the '330 patent."

A16.

After finding no literal infringement, the district court disposed of Pagter's

infringement theory under the doctrine of equivalents finding, as a matter of law,

that "no reasonable jury could find equivalence between the accused shoulder and

the limitation in claim 3 [sic] in the '330 patent," A17, and applied the doctrine of

claim vitiation. A17-19. The district court also found an absence of evidence in

the record demonstrating that the accused shoulder in a different location than

specified in claim 2 would be equivalent to the claimed location. A17-18.

16

Appellants do not appeal the district court's rulings with respect to no infringement under the doctrine of equivalents.

### 7.    Issues on Appeal

On appeal, Pagter principally argues that the District court (i) improperly construed "rectangular crate having sloping side walls" and (ii) adopted a new construction of the "shoulder" limitation in granting summary judgment of no infringement.  *See* Appellant Br. at 2.  Pagter does not raise any argument that the district court improperly resolved a genuine dispute of material fact.  Thus, the issues on appeal rise and fall with the correctness of the district court's claim constructions.

## SUMMARY OF THE ARGUMENT

The district court's grant of summary judgment of no infringement should be affirmed because no reasonable jury could find that the vent side walls of Mouldtec's accused flower have a "shoulder … extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel."

Appellants assert on appeal that the district court committed legal error by construing the limitation "rectangular crate having sloping side walls" to mean that the crate has four sloping side walls. Appellants Br. at 16-25. That construction, however, is correct because both the specification of the '330 patent and its prosecution history make clear that the invention is a nestable crate. In order for the rectangular crate to nest, the four side walls of the rectangular crate must slope, as the district court found. A3. Thus, the district court correctly construed "rectangular crate having sloping side walls" means "that the crate has four sloping side walls."

The district court also did not err in construing the "shoulder" limitation to require a shoulder on four sloping side walls. Appellants' argument centers on the meaning of "sloping side walls" and the number of sloping walls this limitation requires. *See* Appellants Br. at 26-28. In other words, this alleged error presents

the same claim construction issue presented with the "rectangular crate having sloping side walls" limitation, which the district court construed correctly.

Next, the Appellants' argue that the district court granted summary judgment by applying a different construction for the "shoulder" limitation than was set forth in the court's Claim Construction Order.  Appellants Br. at 28-30.  That is simply not the case.  The district court's opinion granting summary judgment cites to its Claim Construction Order and applies the very same claim construction it adopted therein.

Because the district court did not adopt a "new" claim construction when granting summary judgment, Appellants' assertions that it was unable to present evidence of infringement based on the "new" construction lack merit.

As explained below, the district court's claim constructions are correct and the judgment of no infringement should be affirmed.

## ARGUMENT

### 1.  The District Court Correctly Construed "Rectangular Crate Having Sloping Side Walls" To Mean the Rectangular Crate Has Four Sloping Side Walls to Allow the Crates to Nest

The district court held the limitation "rectangular crate having sloping side walls" means, in the context of the '330 patent, "that the crate has four sloping side walls."  A2-3.  The district court reached this conclusion after determining the invention was "essentially a nestable crate," A2, and that "all four walls must slope

19

to nest the crates." A3. The district court's claim construction of "rectangular crate having sloping side walls" is the correct construction because it "stays true to the claim language and most naturally aligns with the patent's description of the invention," *Renishaw PLC v. Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998), and is buttressed by the prosecution history.

## A. The '330 Patent Specification Makes Clear that the Invention Is a Nestable Crate

The district court properly considered the specification and the intended functionality of the invention in determining the scope of the claims. *Medrad, Inc. v. MRI Devices Corp*., 401 F.3d 1313, 1319 (Fed. Cir.2005) ("It is therefore entirely proper to consider the functions of an invention in seeking to determine the meaning of particular claim language."); *see Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1313-14 (Fed. Cir. 2007) (limiting claims in part based on the specification identifying the "primary objective" of the invention and distinguishing the invention from the prior art based on that objective as well as statement made in the prosecution history).

From its beginning, the '330 patent specification explains that the applicants invention is, as the district court held, a nestable crate. A2. The applicants identified known, prior art nestable crates and problems associated with binding that made nested prior art crates difficult to separate. A54, 1:9-26. The applicants "aim" was to "improve" the prior art crates so that "the crates can be nested deeply

20

Case: 16-1131    Document: 17    Page: 27    Filed: 02/11/2016

in one another without the risk of binding."  A54, 1:26-29.  The applicants solved

the problem thorough the use of a "shoulder" structure that allowed their crate to

nest deeply in one another without binding.  A54, 1:30-34; 2:64-3:2.  Nowhere

does the specification suggest that the rectangular crate will not nest, or that

nesting is optional.  To the contrary, the specification makes clear that the "crate

has sloping side walls such that *it is* nestable in a similar crate."  2:47-48 (emphasis

added).

### B. The Prosecution History Confirms that the Applicants Considered their Invention to be a Rectangular Crate Having a "Shoulder" That Allowed the Crate to Nest Without Binding

The prosecution history confirms that nesting is an essential aspect of the

invention.  The applicants clearly and unambiguously argued that the crates of the

invention nest: "*when crates are nested*, the configuration of the shoulder may

prevent the top end of the inner flange of the channel from coming into binding

contact with the outer surface of a side wall of a higher crate."  A870 (emphasis

added).  The applicants emphasized that the "shoulder" structure differentiated the

prior art and allowed for crates to nest.  A870-71.

Later in prosecution, the applicants argued that nesting was inherent in the

claims when read in conjunction with its prior remarks accompanying the

amendment that added application claim 13 which issued as claim 2.  A893.  The

applicants also explained that the shoulder affirmatively provides a "dual

21

function," one of the functions being to "prevent[] binding of nested crates."[7] A894. Thus, during prosecution, the applicants construed the rectangular crate in a manner requiring it to nest, and that construction governs here. *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers.").

In view of the specification and prosecution history, the district court correctly held that the rectangular crate must be able to nest and that to do so, the rectangular crate must have four sloping side walls. A2-A3. "Otherwise, the crates would stack one on top of another rather than fit into one another." A3.

This case presents a claim construction issue similar to the one presented in *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307 (Fed. Cir. 2007). In *Ormco,* the patent related to orthodontic appliances to reposition teeth. *Id.* at 1312. The district court limited the scope of the invention to "automatic computer determinations of the finish positions of the teeth." *Id.* The patent specification described the "primary objective" of the invention as automating tooth repositioning without operator assistance and distinguished the prior art based on that objective. *Id.* at 1313-14. The applicants also made statements during

---

[7] The other function of the shoulder is to support a presentation collar. A894. *See also* A55, 3:4-7.

prosecution differentiating prior art based on the invention's automatic computer determination of the tooth positions, which further supported the district court's construction. *Id.* at 1314-1316. This Court affirmed the claim construction based on the specification and prosecution history. *Id.* at 1316.

In this case, the applicants emphasized the primary objective, or "aim," of their invention was improving the nesting of prior art rectangular crates so that they could nest without binding. A54, 26-29. Applicants' arguments during prosecution reinforced that the rectangular crates of its invention nest without binding because of a structure (the shoulder) not found in the prior art cited by the Examiner. A870-71, A893-94. The district court did not import claim limitations from the specification into the claims, as argued by Appellants. *See* Appellant Br. at 20. Rather, the district court did as this Court did in *Ormco,* and properly "interpret[ed] the claims in light of the specification" and prosecution history because giving a meaning to the claims "broader than any indicated in the patents and their prosecution history would be to ignore the totality of the facts of the case and exalt slogans over real meaning." 498 F.3d at 1316.

### C. Appellants Proposed Claim Construction Improperly Ignores The '330 Patent Specification and Prosecution History and Attempts to Construe "Walls" in a Vacuum

Appellants improperly focus on the word "walls" in isolation without the context of the surrounding claim language, the specification, or prosecution history

in their proposed construction of "rectangular crate having sloping side walls." *See* Appellant Br. at 16-17. Thus, appellants seek to construe the claims in a vacuum, which this Court has repeatedly said it cannot do. *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term ... in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.") *quoting DeMarini Sports, Inc. v. Worth*, 239 F.3d 1314, 1324 (Fed. Cir. 2001); *see also United States v. Adams,* 383 U.S. 39, 49, 86 S. Ct. 708, 15 L.Ed.2d 572 (1966) ("it is fundamental that claims are to be construed in light of the specifications and both are to be read with a view to ascertaining the invention").

As explained above, the specification of the '330 patent and its prosecution history make clear that the "rectangular crate having sloping side walls" of the invention is a nestable crate, which must have four sloping side walls in order to nest.

The district court did not disregard the plain language of the claims as Appellants suggest. *See* Appellants Br. at 20. To the contrary, the plain language of the claim also supports the district court's claim construction. The "crate" of the invention is "rectangular" which means it has four side walls. The "rectangular crate" has "sloping side walls" which most naturally refers to all four side walls of the crate being sloped. Had the applicants intended to require less than all four

sides of the "rectangular crate" to slope, they could have written the claims that way. In fact, the applicants knew how to differentiate opposing side walls of the rectangular crate, but did not do so in claim 2. A54, 2:48-52 ("The crate has sloping side walls such that it is nestable in a similar crate. There are two relatively long side walls located opposite one another and two short side walls located opposite one another. A hand grip opening 8 has been made in each of the short side walls …").

### D. The Prior Art Appellants' Cite Is Extrinsic Evidence and Is Not Probative of the Meaning of the "Rectangular Crate Having Sloping Side Walls"

Neither of the two prior art patents Appellants cite shed any light on how one skilled in the art uses the term "rectangular crate having sloping side walls." *See* Appellant Br. at 18-19 (citing *Vitronics Corp. v. Conceptronics, Inc.,* 90 F.3d 1576, 1584 (Fed. Cir. 1996) for the proposition that "prior art can often demonstrate how a disputed term is used by those skilled in the art"). As an initial matter, the prior art patents are extrinsic evidence that cannot trump the clear and unambiguous intrinsic record evidence regarding what the applicants considered their invention – a nestable crate. *Vitronics*, 90 F.3d at 1583.

More importantly, there is no evidence that either prior art patent Appellants cite actually uses the disputed phrase "rectangular crate having sloping side walls." Appellants do not cite to any text in either patent that uses the disputed term.

Instead, Appellants rely on figures from the prior art patents to demonstrate that "it is entirely possible for a rectangular crate to have two sloping side walls and two non-sloping side walls." Appellant Br. at 18. Thus, neither prior art patent appellants rely on are probative of "how a disputed term is used by those skilled in the art." *Vitronics*, 90 F.3d at 1584.

In stark contrast, the '330 patent itself identifies prior art describing packaging like that of the invention. A54, 1:3-10. The applicants explained that "[t]he invention relates to a packaging for cut flowers comprising: a rectangular crate with sloping side walls …". *Id.*, 1:3-5. Then, the applicants noted that "packaging of this type" (*i.e.* the rectangular crate) was known in the art and "described in EP B 0 311 174." A54, 1:9-10. The prior art patent packaging describes a nestable, rectangular crate with four sloping side walls: "The crate has a rectangular cross-section and the cross-section surface area decreases slightly from top to bottom, so that nesting of crates is possible." A1241, 2:17-20.

Thus, the prior art cited in the intrinsic record of the '330 patent confirms that the invention is for a rectangular crate that has four sloping side walls such that it can nest in another crate of the same design. The extrinsic prior art cited by Appellants is irrelevant.

### E. Claim Differentiation Does Not Apply Because Claims 2 and 14 Differ in Scope Due To Structural Elements Unrelated to a Nesting Capability

The district court's claim construction does not violate the doctrine of claim differentiation. Claim differentiation is "not a hard and fast rule of construction and will be overcome by a contrary construction dictated by the written description or prosecution history." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005).

In this case, the doctrine of claim differentiation does not apply. Appellants point to independent claim 14 and the recitation of the limitation that the "shoulder … prevent[s] one crate from binding to another, similar crate when nested" (which is not expressly found in claim 2) as "suggest[ing] that the applicant did not intend for claim 2 to recite a crate that is capable of nesting." Appellant Br. at 22. As the district court correctly found, Claim 2 and claim 14, however, are different in scope in more ways than simply the nesting limitation. *See* A3-4. In particular, "the ribs disclosed in claim 14 are 'beneath the upwardly facing channel' whereas the ribs disclosed in claim 2 are on the "top portion of the downward facing channel …" A4; *see also* A55-6. Additionally, claim 2 recites a "downward facing channel defined by an outer surface of the crate and a projection of the outer flange below the base …" A55, 4:25-31, which is not recited in claim 14. *See* A56, 6:24-34. Thus, different structural features distinguish the scope of claim 2

27

from claim 14, which negates the application of claim differentiation, as the district court correctly held. A4; s*ee also Mantech,* 152 F.3d at 1376 ("Mantech's argument is flawed, however, because the steps defined in claim 4 of injecting potable water into the groundwater alone distinguish the scope of claim 4 from that of claim 1 and thus make Mantech's argument based on claim differentiation unavailing."); *cf. Seachange,* 413 F.3d at 1368 *citing Mantech Envtl. Corp. v. Hudson Envtl. Servs.*, 152 F.3d 1368, 1376 (Fed. Cir. 1998) ("Moreover, that the claims are presumed to differ in scope does not mean that every limitation must be distinguished from its counterpart in another claim, but only that at least one limitation must differ.").

Even assuming the presumption of claim differentiation applies, which it does not, the specification and prosecution history rebut any presumption. *Toro Co. v. White Consol. Industries, Inc.*, 199 F.3d 1295, 1302 (Fed. Cir. 1999) (claim differentiation "does not override clear statements of scope in the specification and the prosecution history") (internal citation omitted); *see also Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1366 (Fed. Cir. 2000).

Although independent claim 2 does not expressly recite a nesting limitation whereas independent claim 14 does, the specification and prosecution history make clear that the applicants considered their invention to be a nestable crate. As previously stated, the applicants "aim" was to improve prior art nestable

28

rectangular crates so that they would nest without binding.  A54, 1:26-29.  The applicants' solution added a "shoulder" to prior art rectangular crates to facilitate nesting.  A54, 1:30-34; 2:64-3:2.  During prosecution the applicants distinguished the prior art based on the shoulder structure and benefits that flowed from the shoulder structure, namely avoiding binding when crates nested in one another.  A870.  Removing any doubt about whether the crates have the ability to nest, the applicants stated that nesting of crates was "inherent" in application claim 9 submitted in the March 26, 2002 amendment.  A893.  That argument applies equally to issued claim 2, which depended from application claim 9 at the time of the aforementioned amendment.  A864-65 (amendment), A893 (applicants explain they amended claim 9 to "make explicit what was inherent in the claim when read in light of the remarks accompany the amendment filed on March 26, 2002, namely that the projecting shoulder recited in clause (c) of claim 9 prevents one crate from binding to another, similar crate when nested.").

Furthermore, the applicants expressly stated that that the "projecting shoulder (9)[8] provides dual functions of being able to support a presentation collar and preventing binding of nested crates."  A894.  Every indication in the specification and prosecution history confirms the applicants considered their

---

[8] The numeral (9) refers to the number associated with the shoulder in the figures of the '330 patent.

invention to be a nestable crate and that the shoulder feature, which is found in all issued claims of the '330 patent, facilitates that functionality.

Thus, any presumption of claim differentiation is rebutted. *Seachange,* 413 F.3d at 1368 (claim differentiation rebutted where specification consistently referred to network interconnections as point-to-point networks and arguments made to overcome prior art rejections based on point-to-point networks); *Kraft*, 203 F.3d at 1368-69 (presumption of claim differentiation rebutted where every disclosed embodiment employed a relatively stiff "protecting back panel" and the expressed purpose of "protecting back panel" was to protect food tray bottom from damage which the relatively stiff characteristic facilitated); *see also Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369-70 (Fed. Cir. 2007) (rejecting claim differentiation argument where statements in prosecution history limited the scope of the applicants' claimed subject matter).

### 2.    The District Court Did Not Err In Construing the "Shoulder" Limitation

The district court did not commit legal error in construing the limitation "shoulder … extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange." (the "'shoulder' limitation"). The "sloping walls" of the "shoulder" limitation in claim 2 has its antecedent basis in the limitation "rectangular crate having sloping side walls." A55, claim 2. The parties' primary dispute regarding the "shoulder" limitation in the district court

boiled down to the number of side walls that must slope.[9]  *See* A5; A67, A295-98, A308-10.

Although the district court stated in its Claim Construction Order that "the 'shoulder' limitation does not require construction,' A5, the district court adjudicated the parties claim construction dispute as required by *O2 Micro Int'l v. Beyond Innovation Tech.*, 521 F.3d 1351, 1362-63 (Fed. Cir. 2008).  More specifically, the district court rejected Appellants' position regarding the number of sloping side walls that must connect to a "shoulder." A5.  The district court rejected Appellant's proposal because it had already construed "sloping side walls" to require four walls of the rectangular crate to slope in order to nest.  A5.  As explained above, the district court construction of the "rectangular crate having sloping side walls" is correct because it most naturally aligns with what the applicants considered their invention.

The district court concluded that "shoulder" has its ordinary meaning of some lateral protrusion and that the "claim language clarifies the location" of the shoulder.  A5-6.  Thus, the district court held that the "shoulder" limitation had its

---

[9] Appellants also argue that the district court erred in failing to correct a grammatical error, but they do not explain that alleged failure results in reversible error.  *See* Appellant Br. at 26-28.  Fundamentally, the resolution of no infringement hinged on whether "sloping side walls" required four sides of the rectangular crate to slope and the location of the alleged shoulder in Mouldtec's accused products.  The purported grammatical error affects neither issue.

plain and ordinary meaning.   A6.   There is no legal error in the district court's claim construction.

### 3.    The District Court Did Not Adopt a Different Construction for the "Shoulder" Limitation When Granting Summary Judgment of Noninfringement

Appellants' argument that the district court applied a different claim construction for the "shoulder" limitation in deciding summary judgment is belied by the record.  The district court's Summary Judgment Opinion began addressing the "shoulder" limitation by repeating the construction it adopted in its Claim Construction Order.  A14 ("This Court refused to construe the shoulder limitation, instead finding that the plain and ordinary meaning of shoulder as 'some sort of lateral protrusion' controlled and that the claim language clarifie[d] the location of the shoulder." ).

The district court then discussed applicable portions of the specification related to the location of the shoulder relative to the channel base and inner flange. A14-15.   Although the district court quoted a portion of the '330 patent specification stating that "the shoulder is 'arranged on the inside of the channel,'" A15, that does not mean the district court adopted a new claim construction.   In fact, nowhere does the Summary Judgment Opinion state that the district court reconsidered or changed its prior claim construction.   Appellants argument loses sight of the fact that this court "reviews judgments, not passing statements" or

opinions. *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894-95 (Fed. Cir. 1984); *see also Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1540 (Fed. Cir. 1983) ("We sit to review judgments, not opinions.").

Next, the district court discussed factually the location of the alleged shoulder in Mouldtec's accused products. In particular, the district court made factual statements regarding the location of the shoulder relative to the bottom of the channel base and inner flange: "Figure 8 [in the Summary Judgment Opinion] shows the accused shoulder extending between a recessed wall and non-recessed wall; always above the channel. … Even in the picture in Figure 6 above, relied upon heavily by Pagter, there is a distinct gap between the top of the accused shoulder and bottom of the channel." A15.[10] Relatedly, the district court noted that the accused shoulder "does not protrude from any part of the channel." *Id.* Appellants' brief ignores these factual statements upon which the district court based its finding of noninfringement. The district court's factual statements about the structure of the accused products are not a new claim construction either.

---

[10] In its brief, Appellants included annotated cross-section view images of Mouldtec's accused products with colored lines purportedly depicting the shoulder, side wall, channel base and inner flange locations. *See* Appellant Br. at 30. As Mouldtec pointed out in its summary judgment reply brief, the blue line purported to be location of the inner flange (blue line) is inconsistent with and contradicts the position taken by Pagter's expert. *See* A1208-10. The colored lines are unsupported attorney argument. That said, Pagter does not allege that the district court erred by resolving any genuine dispute of material fact. Instead, Pagter alleges errors of claim construction.

The district court's conclusion removes any doubt regarding the claim construction it applied: "Because the accused products do not have a lateral protrusion 'extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel,' no reasonable jury could find that they contain the shoulder limitation in claim 2 of the '330 patent." A16. The "lateral protrusion" language exactly matches the construction given to "shoulder" in the district court's Claim Construction, and the remainder of the concluding sentence parrots the language of claim 2, *i.e.* the plain and ordinary meaning, of where the shoulder is located. A5-6. Significantly, the district court's conclusion makes no reference to whether or not the accused shoulder is "arranged on the inside of the channel." A16.

In view of the totality of the district court's opinion, it is clear that the district court did not adopt a new claim construction, but instead applied the construction determined in its Claim Construction Order.[11]

---

[11] Pagter makes numerous arguments regarding the "ordinary meaning of the shoulder limitation." *See* Appellant Br. at 29. Pagter did not, however, raise these claim construction arguments in the district court, or propose a construction of the ordinary meaning of "extending between." A295-A298, A355. Thus, Pagter waived these claim construction arguments for the "shoulder" limitation by failing to assert them in the district court. *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1296 (Fed. Cir. 2005) ("We have previously held that presenting proposed claim constructions which alter claim scope for the first time on appeal invokes the doctrine of waiver as to the new claim construction.").

34

### 4.    Pagter Was Not Deprived of Procedural Fairness Because the District Court Did Not Adopt a New Claim Construction in Granting Summary Judgment

Appellants' assertion that it was "deprived of basic procedural fairness" is premised on a misplaced belief that the district court adopted a new construction for the "shoulder" limitation in its Summary Judgment Opinion.   Appellant Br. at 31.   The district court did not.   Rather, as explained above, the district court applied the construction it adopted for the "shoulder" limitation in its Claim Construction Order.

"It is axiomatic that issues and arguments which were not raised before the district court cannot be raised for the first time on appeal."   *Textile Banking Co., Inc. v. Rentschler,* 657 F.2d 844, 853 (7th Cir. 1981); *cf. Finnigan Corp. v. International Trade Com'n,* 180 F.3d 1354, 1363 (Fed. Cir. 1999) ("The argument at the trial and appellate level should be consistent, thereby ensuring a clear presentation of the issue to be resolved, an adequate opportunity for response and evidentiary development by the opposing party, and a record reviewable by the appellate court that is properly crystallized around and responsive to the asserted argument.").   In this case, Pagter made no effort to supplement the evidentiary record in the district court in view of the purported adoption of a new claim construction in the Summary Judgment Opinion.   Instead, Pagter failed to raise this issue with the district court and thus, waived this issue for appeal.   *See Textile*

35

*Banking*, 657 F.2d at 852-53 (finding party waived violation of due process argument on appeal for failing to raise the issue in the district court).

Finally, the district court did not grant summary judgment *sua sponte* without notice to Pagter that the district court may grant an adverse summary judgment.   To the contrary, Mouldtec moved for summary judgment of no infringement on the very issue the district court granted: whether the "shoulder" limitation is absent in Mouldtec's accused products?   Appellants were on notice to come forward with all of its evidence regarding the structure of Mouldtec's accused products that purportedly met the "shoulder" limitation and they did just that.   The structure of the accused products was part of the summary judgment record, *see* A939 and A1018, ¶4, and Pagter fails to identify any additional evidence that it would submit regarding the structure of the accused products.   As such, the granting of summary judgment did not deprive Appellants of an opportunity to present evidence.   *See Jones v. Union Pacific R. Co.,* 302 F.3d 735, 740 (7th Cir. 2002) (finding that grant of summary judgment did not deprive party of procedural safeguards where party had notice of summary judgment and failed to identify any additional beneficial evidence).

Finally, the case Appellants cite bears no relationship to the facts of this case.   *Chicago Truck Drivers v. El Paso CGP Co.* involved an action to collect withdrawal liability under the Multiemployer Pension Plan Amendments Act of

1980 (MPPAA). 525 F.3d 591, 594 (7th Cir. 2008). The district court granted plaintiff's (referred to in the opinion as the "Fund") motion for summary judgment of liability, relying on a Seventh Circuit decision called *Bank American*. *Id.* at 597, 603. The Fund subsequently moved for summary judgment on the issue of damages, and assumed in its motion that damages would involve application of the theory presented in the *Bank American* case. *Id.* at 603. The district court denied the Fund's damages' motion, but "entered a final judgment following a different theory of damages." *Id.* at 597*, see also id.* at 603. The Seventh Circuit reversed the damages judgment finding that the Fund lacked notice that the district court would enter damages on a statutory acceleration theory, which was not presented by the Fund in its motion for summary judgment. *Id.* at 603. The lack of an opportunity for the Fund to submit evidence addressing the "new" damages theory relied on by the district court was critical to the reversal: "the Fund was twice denied the opportunity to introduce additional evidence — once when its oral proffer was denied, and again when its motion to supplement the record was denied." *Id.* at 603.

In this case, Pagter made no effort in the district court to supplement the record, nor was it denied the opportunity to do so by the district court.

For all of these reasons, the district court's grant of summary judgment did not deprive Appellants of basic procedural protections.

## CONCLUSION

For the foregoing reasons, Mouldtec respectfully requests that this Court affirm the district court's grant of summary judgment of no infringement of claims 2 and 4 of the '330 patent.


February 11, 2016                              Respectfully submitted,

                                               /s/ Matthew P. Becker
                                               MATTHEW P. BECKER
                                               JON O. NELSON
                                               BANNER & WITCOFF, LTD.
                                               Ten South Wacker Drive
                                               Chicago, IL 60606
                                               Telephone: (312) 463-5000
                                               Facsimile: (312) 463-5001

                                               Attorney for Plaintiff-Appellee
                                               Mouldtec, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of February, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Matthew P. Becker
MATTHEW P. BECKER

Attorney for Plaintiff-Appellee
Mouldtec, Inc.

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).  The brief contains 8,179 words, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).  The brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in a Times New Roman 14-point format.

/s/ Matthew P. Becker

Attorney for Plaintiff-Appellee
Mouldtec, Inc.

February 11, 2016